LILA WOLTER, APPELLEE, V. CLARENCE WOLTER, APPELLANT.

158 N. W. 2d 616

Filed May 3, 1968.    No. 36847.

McFadden, Kirby & Swoboda, for appellant.

Addison & Addison, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ.

McCOWN, J.

The basic issues presented in this case are the effect of a wife's remarriage upon a divorce decree providing for a monthly alimony award to her limited only "until further order of the Court"; and whether a modification of the decree as to alimony, based on such remarriage, may be retroactive or only prospective.

Plaintiff and defendant were divorced on January 17, 1957. The decree ordered the defendant husband to pay plaintiff $50 per month for support and maintenance of the two children and $25 per month as alimony, support, and maintenance of the plaintiff, both payments

to continue until further order of the court. No issue of child support is involved here. On February 21, 1958, some 13 months after the divorce, the plaintiff wife remarried. Plaintiff's new husband has provided for the plaintiff since her remarriage. On September 5, 1962, the trial court was advised in some fashion that plaintiff was remarried, and the trial court thereupon entered an order terminating the monthly alimony payments as of September 1, 1962. A fair presumption from the entire record is that the plaintiff, through her attorney, advised the trial judge in open court of plaintiff's remarriage; the termination was entered on the trial court's own initiative; and no notice was served upon the defendant or his counsel. No amounts have been paid.

On March 17, 1967, the defendant filed an application to modify the original divorce decree of January 17, 1957, by terminating the defendant's obligation to pay alimony as of February 21, 1958, the date that plaintiff was remarried. The district court denied the application for modification; and found that the alimony payments up to September 1962, were due and owing. This appeal followed.

The specific question here is, therefore, limited to the defendant's liability for alimony from the date of plaintiff's remarriage in February 1958, until September 1962, when the obligation to pay alimony was terminated by the further order of the court. No issue is raised as to the liability for alimony until the date of remarriage and the sole ground for modification of the decree is the remarriage of the wife.

Similar problems have produced extensive judicial discussions and varied results. See, Annotation, 48 A. L. R. 2d 270 to 311; 24 Am. Jur. 2d, Divorce and Separation, §§ 645 to 648, pp. 765 to 768, §§ 690, 695 to 697, pp. 805, 809, 810; 27A C. J. S., Divorce, § 239c, p. 1141; 27B C. J. S., Divorce, § 251(3), 251(4), pp. 60 et seq.; 2A Nelson (Rev. Ed., 1961 2d Ed.), Divorce and Annulment, § 17.11, p. 58.

This court has not specifically passed on the effect of a remarriage on a periodic alimony award in a decree where there is no limitation, either of time or amount, nor any reference to remarriage. No statute requiring termination of alimony on remarriage is involved.

We have held that an unqualified allowance of alimony in gross, whether payable immediately or periodically in installments, is a vested absolute judgment not subject to modification. Ziegenbein v. Damme, 138 Neb. 320, 292 N. W. 921.

We have likewise held that an alimony award, unless it is an allowance of alimony in gross, may be revised and altered as to future payments. Dunlap v. Dunlap, 145 Neb. 735, 18 N. W. 2d 51.

The plaintiff relies upon the law, well established in this state, that installments of alimony become vested as they accrue; and that past-due installments become final judgments, which courts have no authority to cancel or reduce. Sullivan v. Sullivan, 141 Neb. 779, 4 N. W. 2d 919, and cases there cited.

It is now almost undisputed that remarriage affects a decree for indefinite periodic alimony. There are two separate views as to the effect of remarriage on an alimony decree. One is that it automatically terminates alimony. The other is that remarriage does not ipso facto terminate alimony but ordinarily justifies an application for termination of alimony. In courts taking the latter position, a judicial determination is almost universally required as to whether alimony continues with or without modification, or terminates. There is also the question of whether the court may cancel alimony which has accrued in the period between remarriage and the subsequent application for modification or termination.

The basic principle that supports both views is that it is against public policy that a woman should have support or its equivalent during the same period from each of two men. On this issue, this court said: " 'Aside

from positive unseemliness, it is illogical and unreasonable that she should have the equivalent of an obligation for support by way of alimony from a former husband and an obligation from a present husband for an adequate support at the same time. It is her privilege to abandon the provision made by the decree of the court for her support under sanctions of the law for another provision for maintenance, which she will obtain by a second marriage; and when she has done so, the law will require her to abide by her election since there is no reason why she should not do so.' " Bowman v. Bowman, 163 Neb. 336, 79 N. W. 2d. 554.

With this basic principle we agree. The problem is complicated by other considerations. Even cases which adopt the automatic termination approach tend to concede that there may be exceptional circumstances under which alimony might be considered as continuing, or that, at least, judicial determination of the question as to whether it continues might be advisable. This is perhaps due to problems involved in the use of the term "alimony" in decrees or orders as representing an allowance for support or property division or settlement, or both. For example, see comments in Bowman v. Bowman, *supra,* indicating that the alimony award represented, in whole or in part, repayment to the wife for her material contributions to the marriage and to the assets of the husband. Other courts have indicated concerns in the area of the validity of the remarriage, particularly where the mental capacity of the wife to contract the second marriage is in issue. The obvious result of an automatic termination would be that the court would lose all jurisdiction and the wife would have no judicial recourse, even though there were extraordinary equities.

The responsibility of the court which severed the marriage relation to continue its jurisdiction so as to avoid inequitable results also supports the view that remarriage does not ipso facto terminate alimony. In the ab-

sence of a statute expressly providing for termination of alimony upon the wife's remarriage, there seems to be no reason why the court should lose its power to continue, modify, or terminate such alimony if the circumstances of the parties change. The difficulty lies in determining whether the court, if permitted to act, would, in fact, be acting retroactively upon vested rights amounting to final judgments.

The essential keystone that supports a decree for "true" alimony payable in the future for support and maintenance of a divorced wife is the continued unmarried status of the wife. The public policy considerations already discussed verify it. Our courts have specific statutory power to revise and alter a decree as to alimony at any time. The final sentence of the statute authorizing alimony revision is: "The court may make any decree respecting any of the matters which such court might have made in the original suit." § 42-324, R. R. S. 1943.

Under these circumstances, the right of the wife to demand and receive alimony payments accruing after remarriage is discretionary with the court which rendered the decree. The extent of this discretion and power is such that after remarriage no absolute or vested right attaches to receive the installments ordered to be paid until judicially determined. This is true even though no application to modify has been made prior to the installments becoming due. Where the fact of remarriage justifies the modification or termination of alimony upon application, there is no justifiable reason to hold that the court has no power to relate its order back to the remarriage which gave rise to the right to terminate or modify.

We hold that the remarriage of a divorced wife does not automatically, in and of itself, terminate her right to receive alimony payable periodically and not in gross; but it does establish a prima facie case which requires the court to terminate it in the absence of proof of some

extraordinary circumstance justifying its continuation.

We also hold that where the court has power to revise, alter, or terminate an alimony award upon remarriage of the wife, her remarriage operates to hold in abeyance her right to receive further alimony payments until a final judicial determination. Installments of alimony accruing after remarriage of the wife do not vest nor have the finality of a judgment until such determination, and the court has jurisdiction and authority to cancel or modify arrears of such alimony retrospectively back to, but not beyond, the date of remarriage.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded with directions to modify the original divorce decree of January 17, 1957, by terminating the defendant's obligation to pay alimony as of February 21, 1958.

REVERSED AND REMANDED WITH DIRECTIONS.