Hillsborough
No. 86-529

KATHLEEN E. WILLIAMS

v.

JOSEPH J. WILLIAMS

August 24, 1987

*Thornton & Thornton P.A.*, of Manchester (*William G. Thornton* on the brief and orally), for the plaintiff.

*Leonard & Borrelli P.A.*, of Nashua (*Vera Borrelli Buck* on the brief and orally), for the defendant.

BROCK, C.J. The issue in this case is whether alimony payments provided for by a divorce decree or stipulation vest as they become due, thereby precluding the trial court from determining that the

receiving spouse's remarriage terminates such spouse's right to collect alimony as of the date of the remarriage. For the reasons that follow, we hold that remarriage acts to hold in abeyance the receiving spouse's right to collect alimony until such time as a final judicial determination can be made.

The plaintiff, Kathleen E. Williams, and the defendant, Joseph J. Williams, were divorced on September 5, 1978. Pursuant to the terms of their divorce decree, the defendant was obligated to pay the plaintiff $160 per week; $80 as alimony and $80 as child support. The decree did not contain language indicating that the defendant's obligation to pay the alimony ceased upon the plaintiff's remarriage; however, on August 28, 1981, the plaintiff remarried, and the defendant immediately ceased making alimony payments. In the fall of 1985, the defendant also ceased making child support payments.

In November of 1985, the plaintiff filed a petition for contempt in the superior court, alleging that the defendant was delinquent in his alimony and child support payments. In response, the defendant filed an answer to the petition for contempt and a motion to modify the support order. In his answer, the defendant denied each and every allegation of the plaintiff's petition, and further asserted that he had been making the child support payments and that the plaintiff had remarried in August, 1981. In his motion to modify the support order, the defendant contended *inter alia* that the plaintiff's remarriage provided her with sufficient income so as to relieve him of his obligation to support the plaintiff and the minor child residing with her.

Upon the Master's (*Bruce F. DalPra*, Esq.) recommendation, the Superior Court (*Dalianis*, J.) ruled that the defendant's obligation to pay alimony to the plaintiff terminated as of the date of the plaintiff's remarriage, and found the defendant in contempt for being in arrears in child support payments. The plaintiff's motion for rehearing on the alimony issue was denied by the superior court. No challenge was made with respect to the child support order. This appeal followed.

On appeal, the plaintiff argues that while her remarriage may have entitled the defendant to request modification of the alimony portion of their divorce decree, it did not automatically entitle the defendant unilaterally to cease making such alimony payments as of the date of her remarriage. She contends that the defendant's obligation to pay her alimony continues until such time as the appropriate court modifies the decree and relieves him of that obligation. The plaintiff further maintains that such a modification

order may not be retroactively applied; that is, that past-due and unpaid alimony installments are vested, so that the defendant is only entitled to judicial relief from those payments which would become due and owing after a modification order is entered.

The defendant argues that the master did not abuse his broad discretion in finding that the plaintiff's right to alimony terminated as of her remarriage because she failed to show a need for its continuation. Moreover, the defendant argues that the alimony payments claimed by the plaintiff as delinquent never became due and owing, and therefore were not vested, because the master determined that the plaintiff's right to alimony terminated with her remarriage.

■ Neither party disputes that as a general matter in New Hampshire, the remarriage of the spouse receiving alimony does not automatically terminate the paying spouse's obligation to make alimony payments. *Eaton v. Eaton*, 90 N.H. 4, 7, 3 A.2d 832, 834 (1939); *see also Kornos v. Kornos*, 110 A.2d 656, 657 (Conn. Super. Ct. 1954); *Boiteau v. Boiteau*, 227 Minn. 26, 28–29, 33 N.W.2d 703, 705 (1948); *Nelson v. Nelson*, 282 Mo. 412, 417–19, 221 S.W. 1066, 1068 (1920). "The obvious result of an automatic termination would be that the court would lose all jurisdiction and the [spouse receiving alimony] would have no judicial recourse, even though there were extraordinary equities." *Wolter v. Wolter*, 183 Neb. 160, 163, 158 N.W.2d 616, 619 (1968). It is clear from *Eaton* that this court is committed to the rule that remarriage of a divorced spouse does not *ipso facto* abate alimony, but rather leaves such a determination to the discretion of the trial court or master. *See also Wolter, supra* at 164, 158 N.W.2d at 619.

■ As the facts of this case demonstrate, the difficulty arises in ascertaining whether the trial court would be acting retroactively upon vested rights if it terminated alimony between the remarriage and the subsequent decree for modification or termination. "The master has broad discretion in determining whether an alimony award should be modified or terminated." *Hannemann v. Newcomb*, 125 N.H. 289, 292, 480 A.2d 132, 134 (1984) (citing *Noddin v. Noddin*, 123 N.H. 73, 75, 455 A.2d 1051, 1053 (1983); *Collette v. Collette*, 108 N.H. 469, 470, 238 A.2d 598, 598 (1968)). We will uphold the master's determination in this regard unless, upon the evidence, it clearly appears that there has been an abuse of discretion. *Hannemann supra* (citing *Marsh v. Marsh*, 123 N.H. 448, 451, 462 A.2d 126, 128 (1983)). Thus, the right of the spouse receiving alimony to demand alimony payments

accruing after remarriage is discretionary with the court which rendered the decree.

██ "Where the fact of remarriage justifies the modification or termination of alimony upon application, there is no justifiable reason to hold that the court has no power to relate its order back to the remarriage which gave rise to the right to terminate or modify." *Wolter supra.* Therefore, we hold that the remarriage of the spouse receiving alimony "operates to hold in abeyance her right to receive further alimony payments until a final judicial determination." *Wolter, supra* at 165, 158 N.W.2d at 620. Accepting such a premise, only payments accrued up until the date of the remarriage are vested such that they may not be cancelled by the court. *See Wolter, supra* at 162, 165, 158 N.W.2d at 618, 620; *Boehmer v. Boehmer,* 259 Ky. 69, 72, 82 S.W.2d 199, 200 (1935).

In the present case, following a hearing and review of memoranda of law submitted by the parties, the master ruled that the defendant's obligation to pay alimony to the plaintiff terminated as of the date of the plaintiff's remarriage. Relying on *Eaton,* the master indicated that the plaintiff failed to show circumstances warranting continuance of the alimony payments following her remarriage. The defendant proved remarriage, and the plaintiff offered no evidence regarding her need for continuing support payments. Thus, we are unable to conclude that the master abused his discretion in determining that the plaintiff's remarriage terminated her right to receive alimony from her ex-husband.

We note that when the defendant ceased making alimony payments in this case, he was under the mistaken assumption that his ex-wife's remarriage automatically terminated his duty to make the payments. As such, he faced the possibility of being held in contempt if the trial court had determined that he was obligated to make such payments. The defendant's non-payment, however, does not affect the result in this case because the master was aware of the defendant's non-payment and nonetheless determined that the plaintiff was not entitled to receive back alimony because she failed to prove need.

The plaintiff cites dictum in *McCrady v. Mahon,* 117 N.H. 762, 378 A.2d 1143 (1977) in support of her claim that she has a vested right in the alimony payments accruing after her remarriage. *McCrady,* however, is factually distinguishable from the case presently before us. The plaintiff in *McCrady* filed a petition for contempt for her ex-husband's failure to pay child support. 117 N.H. at 762, 378 A.2d at 1143. *McCrady* did not involve a contest for alimony, nor was there any issue of remarriage for the court

to consider. Because a court considering the question of alimony has different concerns that simply do not arise in child support cases, we decline to apply the dictum in *McCrady* here.

 "In the absence of a statute expressly providing for termination of alimony upon the wife's remarriage, there seems to be no reason why the court should lose its power to continue, modify, or terminate such alimony if the circumstances of the parties change." *Wolter*, 183 Neb. at 163–64, 158 N.W.2d at 619. Thus, in view of the plaintiff's remarriage, and all the facts and circumstances disclosed by the record in this case, we cannot say that the master abused his discretion in relieving the defendant of all obligation to pay alimony following his wife's remarriage.

*Affirmed.*

BATCHELDER, J., did not sit; the others concurred.