Janey **PETERSON**, Plaintiff and Appellant,

v.

Gregory A. **PETERSON**, Defendant and Appellee.

No. 16070.

Supreme Court of South Dakota.

Considered on Briefs May 24, 1988.

Decided Jan. 11, 1989.

Karen E. Schreier of Hagen & Wilka, P.C. Sioux Falls, for plaintiff and appellant.

Gary Pashby of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendant and appellee.

BRADSHAW, Circuit Judge.

Janey Peterson (Janey) appeals from a judgment terminating her right to receive alimony from Gregory A. Peterson (Gregory), and increasing from $500 to $665 the amount of child support Gregory is obligated to pay each month. In addition, Janey has petitioned this court for attorney fees on appeal. We affirm the trial court and deny Janey's request for attorney fees.

### FACTS/PROCEDURAL HISTORY

Janey and Gregory were married on August 12, 1967. Megan, who is now 14 years old, and Ryan, now 11 years old, were born to this marriage. The marriage lasted for seventeen years until, because of Gregory's misfeasance, Janey instituted an action for divorce.

On May 2, 1985, Janey was granted a divorce. The judgment and decree of divorce gave custody of Megan and Ryan to Janey, decreeing that Gregory pay $250 per month, per child, for the support of the children. The trial court concluded further that Janey should receive one-half of the property amassed during the marriage through the joint efforts of the parties, and

30 per cent of the property which had been donated to Gregory by his father. Janey also received, as part of the property award, $115,063 in cash. She thus obtained a total property award, after deducting liabilities, of $329,858. Finally, the court decree provided the following language:

(Gregory) is ordered to pay to (Janey) as alimony the sum of $1,000 per month for a seven-year period starting with the first month after the entry of judgment herein, ... after said seven-year period, (Gregory) shall pay to (Janey) $500 per month, ... for an additional 10 years unless during this last 10–year period (Janey) dies or *remarries*, at which time this portion of the alimony shall cease. (emphasis supplied)

Gregory petitioned the trial court to amend its divorce judgment and extinguish his duty to provide alimony when he learned that Janey had remarried on August 1, 1987. Janey resisted and countered with a motion to adjust upward the amount of child support Gregory was required to pay.

The trial judge granted both motions. Gregory's monthly child support obligation increased from $500 to $665 and, pursuant to our ruling in *Marquardt v. Marquardt by Rempfer*, 396 N.W.2d 753 (S.D.1986), his obligation to pay alimony was cancelled.

Janey has asked us to review these two lower court rulings, contending, first, that the trial court misconstrued *Marquardt*, and, second, that the trial court misinterpreted SDCL 25–7–7 when it failed to include certain items in Gregory's gross income in determining support.

As with all appeals, it is necessary, at the outset, to delineate the applicable standard of review. It is settled law in South Dakota that this court will not disturb an award of alimony or child support, or a division of property, unless it clearly appears that the trial court abused its discretion. *Guindon v. Guindon*, 256 N.W.2d 894 (S.D.1977). We have often said this court must " 'not ... determine whether [we] would have made an original like ruling, but whether we think a judicial mind, in view of the law

and the circumstances of the particular case, could reasonably have reached such a conclusion.' " *Havens v. Henning*, 418 N.W.2d 311, 312 (S.D.1988) (*quoting Davis v. Kressly*, 78 S.D. 637, 107 N.W.2d 5 (1961)). With this standard in mind, we embark upon an analysis of the issues in this case.

## ISSUE I

DID THE TRIAL COURT ERR IN TERMINATING GREGORY'S RESPONSIBILITY TO FURNISH ALIMONY FOR JANEY?

### DECISION

Janey seeks an affirmative resolution of this issue by advancing three alternative assertions:

(1) That the language of the trial court's alimony award indicates by implication that Gregory's duty to pay alimony would not cease if Janey remarried during the initial seven years following the parties' divorce;

(2) That the alimony award was an integral part of the property settlement segment of the divorce decree; and

(3) That extraordinary circumstances exist, i.e., Janey's new husband is unable to support her, which require the perpetuation of her alimony payments.

These contentions will be addressed *seriatim*.

■ In *Marquardt, supra*, we opined that " '[p]roof that the spouse receiving spousal support payments has remarried establishes a *prima facie* case requiring the court to terminate the support payments unless [the recipient of the support payments can show] extraordinary circumstances which justify continuation of the payments.' " 396 N.W.2d at 754 (*quoting Bauer v. Bauer*, 356 N.W.2d 897, 898 (N.D. 1984)). By adopting this stance, we rejected the automatic termination rule espoused in *Voyles v. Voyles*, 644 P.2d 847 (Alaska

1982), and other cases.[1] These automatic termination jurisdictions have allowed alimony to continue, despite remarriage, if the parties' agreement or the decree of the court expressly provided that the flow of alimony was to remain unimpeded by the recipient spouse's remarriage. Janey urges us to adopt this exception in this case.

We must repeat, in order to fully comprehend the gist of Janey's argument, the succeeding pertinent language of the alimony award:

> (Gregory) is ordered to pay to (Janey) as alimony the sum of $1,000 per month for a seven-year period starting with the first month after the entry of judgment herein, ... After said seven-year period, (Gregory) shall pay to (Janey) $500 per month, ... for an additional 10 years unless during this last 10–year period (Janey) dies or *remarries,* at which time *this portion* of the alimony shall cease. (emphasis supplied)

Since this language fails to provide that alimony payments will end if Janey remarries during the first seven years, Janey maintains that "it clearly *implies* that remarriage does not operate to terminate alimony during the first seven years." (emphasis supplied) This assertion is without merit.

Janey's reliance on the *Voyles* exception is misplaced because the *Voyles* exception, by its terms, applies only where there is an express statement that alimony is to survive notwithstanding the remarriage of the recipient spouse. Silence in a divorce decree or a voluntary agreement, as to the occurrence of remarriage, falls short of a specific declaration that alimony will endure in the event the recipient spouse remarries. *Ehrenworth v. Ehrenworth,* 187 N.J.Super. 342, 454 A.2d 895 (1982); *Lord v. Shaw, supra.* Thus, the parties to a divorce must, to avail themselves of the *Voyles* deviation, point to either a state-ment in an agreement or divorce decree which provides that the payor spouse will pay alimony, irrespective of the recipient spouse's remarriage, or evidence that the parties intended that the alimonial obligation would survive past the date of the payee spouse's remarriage. Here, since Janey has shown neither the amount of evidence required nor an agreement that alimony would continue after her remarriage, her argument must collapse.

▮ Next, Janey argues that the alimony award was an intrinsic part of the property settlement segment of the divorce decree. It is well settled in this state that allowances of alimony and support money for the wife and children of a marriage are subject to revision and amendment when conditions change. *See, e.g., Matthews v. Matthews,* 71 S.D. 115, 22 N.W.2d 27 (1946). However, this rule does not apply insofar as property rights of the parties are concerned. *See Holt v. Holt,* 84 S.D. 671, 176 N.W.2d 51 (1970). Consequently, Janey asserts that the alimony award is, in fact, part of the property settlement; therefore, it cannot be modified. We refuse to countenance this contention on the basis of the facts before us.

In *Lien v. Lien,* 420 N.W.2d 26 (S.D. 1988) (*Lien II*),[2] we held that payments, though denominated as "support," were, in fact, part of a property division between the parties. As such, they were not terminable under *Marquardt.* We reached that conclusion due to the husband's insistence, at trial, that the payments be labeled "support" so that he could avoid the adverse tax consequences attendant to a total cash award of property.

It is apparent from a reading of *Lien II, supra,* that when deciding whether an award of alimony is, in reality, a portion of a property settlement, a court must scrutinize the language of the divorce decree, the circumstances encompassing it, and the end sought to be achieved by the parties.[3] Af-

---

1. *See e.g., Lord v. Shaw,* 682 P.2d 853 (Utah 1984); *Burr v. Burr,* 353 N.W.2d 644 (Minn.App. 1984); *Van Bloom v. Van Bloom,* 196 Neb. 792, 246 N.W.2d 588 (1976).

2. *See also Lien v. Lien,* 278 N.W.2d 436 (S.D. 1979) (Lien I).

3. For a case in which we employed this analysis when perusing a voluntarily negotiated property settlement agreement, as opposed to a divorce

ter conducting this examination in the present case, we are left with the conviction that the alimony award was not a disguised property settlement.

Here, the divorce decree provided that Janey receive the parties' right, title, and interest in and to Karen's, Inc. (a retail store), the family residence, the personal property situated within the home, a 1978 station wagon, and $115,063 to be paid in cash within six months of the date of the decree. This amounted to a total property award of $329,858. The cash award was, in the trial judge's words, necessary to "effectuate the property division."

Based on this language, it is obvious that this money, not the periodically paid alimony, was an integral part of the property settlement necessary to accomplish an equitable division of property. The wording of the divorce decree, coupled with the circumstances of the divorce, indicates that the monthly payments made by Gregory to Janey were for her support and were not meant to accomplish an equitable property division. Thus, this contention of Janey's must also fail.

■ In her brief, Janey also attempts to label her alimony "rehabilitative." As such, she says, it may not be terminated. Since we are of the opinion that the rule in *Marquardt, supra,* applies to all alimony, regardless of its classification, and because the cases cited by Janey are factually distinguishable, this argument is also without merit.

■ Janey's final position under this alimony issue is that extraordinary circumstances exist which require the continuation of her alimony payments. Janey argues that since she has not profited economically from her second marriage, she needs the alimony to live in the style to which she had become accustomed prior to her divorce from Gregory. In one of her affidavits, Janey says that "I did marry Timothy W. Johnson on August 1, 1987; however, his income, together with my child support, is not sufficient to provide for me and my two minor children." The

decree, *see Malcom v. Malcom,* 365 N.W.2d 863

following passage, extracted from the opinion in *Nugent v. Nugent,* 152 N.W.2d 323, 329 (N.D.1967), capsulizes our view of Janey's assertion:

> [W]e do not believe that such factors [that the husband's fault caused the divorce, that the wife contributed to the household while the husband obtained a medical degree, and that the wife's new husband was unable to provide for her in the same fashion as her previous mate] constitute extraordinary circumstances as would justify the continuation of the alimony payments in this case, [wife] having voluntarily elected to marry another, who now must assume the responsibility for her support.

Additionally, we have said "it is 'illogical and unreasonable' that a spouse should receive support from a present spouse and a former spouse at the same time." *Marquardt, supra* at 754. *See also Wolter v. Wolter,* 183 Neb. 160, 158 N.W.2d 616 (1968); *Marriage of Shima,* 360 N.W.2d 827 (Iowa 1985).

Since Janey has shown no extraordinary circumstances to rebut the *prima facie* requirement that alimony should terminate, we hold that the trial court was correct and did not abuse its discretion in terminating Janey's alimony.

### ISSUE II

DID THE TRIAL COURT ERR IN ITS APPLICATION OF SDCL 25–7–7 TO THE FACTS OF THIS CASE?

### DECISION

In addressing this issue, Janey asserts that the trial court wrongly refused to include in Gregory's monthly gross income certain items listed as income on Gregory's 1986 federal income tax return, and that the trial court abused its discretion when it established the child support obligation for Gregory, an obligor with a net monthly income exceeding $1,500. Janey complains that the increase in the amount of monthly child support was insufficient; Gregory claims that the increase was unwarranted.

(S.D.1985).

We rule that the trial court correctly interpreted SDCL 25-7-7, and that it acted within the bounds of its discretion when it increased Gregory's monthly child support obligation.

Janey argues that the lower court abused its discretion by, first, not considering money earned (but never actually received) by Gregory which was put back into the family business, and, second, by awarding a sum that is mathematically at a lower percentage of net income than that given other income brackets under the statute.

SDCL 25-7-7 defines monthly gross income to include, in pertinent part, amounts received from the following sources:

(1) Compensation paid to an employee for personal services, whether called salary, wages, commissions, bonus or other designations;

(2) Gain or profit from a business or profession, farming included, usually called self-employment income; ...

(4) Interest, dividends, rentals, royalties or other gain derived from investment of capital assets ... .

Furthermore, SDCL 25-7-7 states that "[g]ross income from ... rentals, royalties, ... or other sources, are the net profits or gain shown on any or all schedules filed as part of the obligor's federal income tax returns for any business with which he is associated ...". The statute goes on to provide that the court may allow or disallow deductions from an obligor's monthly gross income which, although listed on the obligor's federal income tax return, do not require the disbursement of cash.

■ In the present case, Gregory's 1986 federal income tax return lists, among other items, net rental income from a truck stop in Worthington, Minnesota, and interest income from a contract for deed. According to the evidence, Gregory never received these monies; instead, they were utilized to keep the truck stop in a reasonable state of repair. Consequently, Gregory avers, these funds added nothing to his income.

In the proceedings below, Janey implored the trial court to determine Gregory's net monthly income to be $4,514.66, which included earnings from the Worthington property and Ronning Enterprises. Gregory, by contrast, urged the trial court to delete from his monthly gross income the funds from the Worthington property and Ronning Enterprises, thereby reducing his net monthly income to $3,213.16. The lower court determined that Gregory had a monthly gross income, excluding the two sums of money he never receives, of approximately $5,029.00, or a net monthly income of $3,212.00. Thus, the trial judge, though cognizant of Gregory's unreceived income, refused to include it when he computed Gregory's monthly gross income.

Reading SDCL 25-7-7 as a whole, as we must (see Bruning v. Jeffries, 422 N.W.2d 579 (S.D.1988)), we are unable to hold that the trial judge erred in interpreting the statute. Pursuant to its terms, SDCL 25-7-7 includes in an obligor's monthly gross income only those amounts received by the obligor. Here, Gregory did not receive the rental or interest income, he was without power to guide the disposition of this income, and the expenditure of the income did not inure to his benefit. With these facts as a foundation, we hold that the trial judge acted within the bounds of his discretion when he refused to include within Gregory's monthly gross income rental and interest income listed on Gregory's federal income tax return.

Additionally, Janey remonstrates that the trial judge misused his discretion when he arrived at an amount of child support to be paid by Gregory, who has a net monthly income exceeding $1,500. We disagree.

When confronted with an obligor with a net monthly income greater than $1,500, the trial judge must use a discretion which is tempered by the requirement that it have a sound basis in the available evidence. See Havens v. Henning, 418 N.W.2d 311 (S.D.1988). This discretion is to include an appraisal of the realistic needs of the children and the obligor's ability to satisfy these requisites. Id. The trial court must consider the financial condition of both parents, including the mother's new spouse. Bruning, supra.

■ SDCL 25–7–7 specifically requires that, if net monthly income exceeds the $1,500 level, the amount of child support shall be at an appropriate level, and in no instance may the amount of support be less than that required at the $1,500 level. The statute requires support payments of between $462 and $495 for the support of two children at the $1,500 level. The lower court ordered support of $665 per month,[4] which exceeds the amount required at the $1,500 level. This is all that SDCL 25–7–7 requires. The statute does not require a mathematical analysis of percentages but rather requires that support be at an appropriate level, and not be less than that required at the $1,500 level. The trial court must do more than a mere mathematical extrapolation from the table in SDCL 25–7–7. *Havens, supra.*

The trial judge had access to the affidavits of Gregory and Janey, as do we. Janey's affidavit contains an enumeration of the children's monthly expenses. Likewise, Gregory, in his affidavit, outlines his current financial situation, including his present monthly gross and net incomes. The conclusion of the trial court that the support of the children should be raised to $665 per month is adequately supported by the record. Janey's contention that the support is not sufficient to "provide for me and my two minor children" is misguided. The support is not for the custodial parent, it is for the children, and it should be sufficient to pay the family expenses apportioned to the children. Also, the remarriage of Janey and the income of Janey and her husband[5] is a deviation factor to be considered by the court. SDCL 25–7–7; *Bruning, supra.*

This evidentiary showing, allied with the trial judge's general finding that Gregory and Janey each have enough income and resources to adequately provide for Megan and Ryan, convinces us that the trial judge possessed sufficient evidence from which he could discern, as a matter of law, that Gregory's child support obligation should be elevated to the level established by the trial court. Hence, we find no abuse of discretion, and the trial judge's determination shall stand.

## ISSUE III

IS JANEY, AN UNSUCCESSFUL APPELLANT, ENTITLED TO ATTORNEY FEES ON APPEAL?

## DECISION

■ SDCL 15–17–7 accords us authority to award attorney fees in divorce cases on appeal. *See also Hersrud v. Hersrud,* 346 N.W.2d 753 (S.D.1984). Attorney fees may be granted on appeal, regardless of the success of the party requesting them, unless that party has proceeded in bad faith, or has brought a frivolous or unjustified action. *See Peshek v. Peshek,* 297 N.W.2d 323 (S.D.1980); *Foss v. Foss,* 83 S.D. 574, 163 N.W.2d 354 (1968). Since we are concerned here with an unsuccessful appellant, a strong case must exist to warrant an assignment of attorney fees. *See Struck v. Struck,* 417 N.W.2d 382, 384 (S.D.1987) (Morgan, J., concurring specially).

We must, in deciding whether we have been presented with such a case, "consider the property owned by each party, the relative incomes, the liquidity of the assets and whether either party unreasonably increased the time spent on the case."[6] *Struck, supra* at 383; *Hautala v. Hautala,* 417 N.W.2d 879 (S.D.1988).

In this case, Janey receives a gross monthly income of $1,666, including wages from employment, rental income, trust income, and investment income. Her husband also receives monthly income of $1,666, plus some employment benefits.

---

4. Gregory also pays for the following items for the benefit of the children: insurance premiums of $148.00 per month, camp expenses, skiing expenses, and airline expenses.

5. Janey and her present husband earn a gross monthly income of $3,332.00, plus some employment benefits (rent and utilities).

6. These factors differ from those we examine when reviewing a trial judge's decision whether to allow attorney fees. *See, e.g., Cole v. Cole,* 384 N.W.2d 312 (S.D.1986).

Their combined gross monthly income amounts to approximately $3,332. Janey's assets consist of the former marital home valued at $127,000, the remainder of her cash settlement proceeds of $70,000, and proceeds of $39,000 from the sale of her interest in Karen's, Inc. The last two items may be considered liquid assets. We recognize that a depletion of these liquid assets will result in a deduction of interest income to Janey.

Gregory has gross monthly income, excluding the two sums of money he never receives, of $5,029. He and his two brothers own the truck stop in Worthington, Minnesota, an interest in C.C. Peterson Realty Co., a promissory note of $250,000 from Peterson Oil Co., and an interest in Ronning Enterprises. Even though Gregory has more gross monthly income than Janey, none of his assets are liquid.

Finally, neither party unreasonably increased the time spent on the appeal.

Janey properly filed a petition for attorney fees, taxes, and costs. On the basis of the facts in this case, and after considering the equities of the matter, we are of the opinion that such an allowance is not warranted. Therefore, Janey's petition is denied.

MORGAN and HENDERSON, JJ., concur in part and concur in result in part.

SABERS and MILLER, JJ., dissent in part and concur in result in part.

BRADSHAW, Circuit Judge, for WUEST, Chief Justice, disqualified.

MORGAN, Justice (concurring in part, concurring in result in part).

I concur in the majority opinion with respect to affirming the increase in the child support; however, I can only concur in the result on the issue of termination of the alimony.

With respect to the issue of termination of the alimony, I would simply reject out-of-hand Janey's reliance on the exception in the case of *Voyles v. Voyles*, 644 P.2d 847 (Alaska 1982). As the majority has correctly noted, this court, by adoption of the *Marquardt* * rule, has rejected the *Voyles* rule of automatic termination. Having rejected the predicate, how then can an exception be relied upon by Janey? Such reliance should fail out-of-hand.

I concur in the result, however, because I believe that the trial judge, in arriving at his decision on termination, correctly relied on our *Marquardt* decision. In his findings of fact, the trial judge (who had also entered the divorce decree) dispensed with Janey's argument for implied continuation beyond remarriage by stating:

> [T]he Court intended that the remarriage of the Plaintiff would be only one factor in determining whether the alimony would terminate prior to the end of seven years and intended that the alimony would continue unless Defendant could prove a change of circumstances to justify termination of the alimony prior to the end of seven years.

He then specifically found:

> Plaintiff has shown no extraordinary circumstances so as to justify the continuation of alimony following her remarriage.

A review of the record supports that finding. Janey seeks continuation of alimony because she married a man who apparently cannot support her in the manner to which she is accustomed. The trial court granted some increase in child support to protect the children but declined to rescue Janey from her own decision. In this case, I agree with him.

HENDERSON, Justice (concurring in part; concurring in result in part).

### ALIMONY

Without conceptually marrying myself to the *Marquardt* "prima facie" language, and the *Lien II* holding that "support" is not "support" but is part of a property settlement division, I concur in result with the holding in this opinion on alimony. My dissent in *Marquardt* is alluded to for my

* *Marquardt v. Marquardt By Rempfer*, 396 N.W. 2d 753 (S.D.1986).

specific rationale. Essentially, a woman might well obtain support from one man, but should not obtain support from two in the same equivalent time. One man, one woman, one support. Clearly, this alimony should be terminated and the trial court so held. In *Lien II,* I did not participate, as I disqualified myself because the two parties were from Western South Dakota, where my judicial district exists, and I knew the parties for many years. I disqualified myself in *Lien II,* believing that my mind was not in the free and open state, due to some personal knowledge of the factual background, thus precluding totally objective review.

## CHILD SUPPORT

In this matter, I concur in result.

Child Support, in this state, has undergone a radical, dramatic philosophical change with the advent of the newly revamped SDCL 25-7-7. For an analysis by this author of the new rigid guidelines and a violation of the constitutional principle of separation of powers, *see Sharp v. Sharp,* 422 N.W.2d 443, 448–49 (S.D.1988) (Henderson, J., dissenting); *Bruning v. Jeffries,* 422 N.W.2d 579, 582–84 (S.D.1988) (Henderson, J., concurring in result); and *Donohue v. Getman,* 432 N.W.2d 281, 283 (S.D.1988) (Henderson, J., concurring specially).

Not deigning to change our trial judges into schedule-automatons (read a schedule, plug in some facts, push a button, out comes the answer), but rather choosing to imbue them with judicial discretionary power springing from experience, clothed with constitutional power, and blood cells stimulating the brain, I join in affirming the increase in child support. However, it is upon this basis: His Honor did not abuse his discretionary power. His Honor belongs to the judiciary and has the right to be a full participant in the Doctrine of Separation of Powers. He need not, because the Legislature says so, make decisions affecting the lives of children and mothers and fathers, by the rigidity of mathematical analysis of percentages; nor, need he decide the fate of human beings by a sterile, mathematical extrapolation of tables foisted upon him by a new mood swing in America. Namely, in pursuit of the golden goose of federal funding, our Legislature shattered the constitutional Doctrine of Separation of Powers.* *Donohue,* at 284–85. Here, the trial court did not err in raising the child support because the children had grown older and their needs had increased. The trial judge recognized that appellee was the Director of Job Service for the State of South Dakota and found that he had a sizeable income (undisputed monthly gross income of $5,029 per month). At $665 per month child support, this constitutes approximately 16% of the net income of the father. He has business interests. Not too many moons ago, this Court held that a decision of the trial court would be reversed if the trial court acted in a manner which amounts to an abuse of discretion defining " 'a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *State, Fall River County v. Dryden,* 409 N.W.2d 648, 651 (S.D.1987) (citations omitted). This is well-settled law in our state, going back to *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981). I would limit the holding on child support to be that the trial court did not abuse its discretion without alluding to any correct interpretation of SDCL 25-7-7. When discretion is divested from a trial judge, and a schedule of support is substituted therefor by which he must abide, theoretically how can a trial judge abuse his discretion, within a table of support, which has already stripped him of his discretion? *Fall River County,* 409 N.W.2d at 651. Thinking of an old poem, learned as a struggling student who feasted on the likes of Omar Khayyam, Robert Service, and Edgar Allan Poe, I muse:

Make new law, but keep some old.

Those are silver, these are gold.

---

* Since my minority writings in the above, I take judicial notice (fully appreciating that this Court is not bound thereby) of SDCL 25-7-7 being held unconstitutional by Presiding Judge Gene

Paul Kean of the Second Judicial Circuit, Piatt v. Shelton, No. Div. 79-643, Minnehaha County, South Dakota, via Order dated the 28th day of October, 1988.

New made laws, like new wine,
Age will mellow and refine.
Doctrines that have stood the test,
Time, and change, are surely best.
Though memory fade, hair go gray,
Some good law, never knows decay.

Credit to Joseph Parry, author of original poem "New Friends and Old Friends," lyrics from whence I have borrowed. Or, as J.R.R. Tolkien put it: "The old that is strong does not wither, Deep roots are not reached by the frost." Tolkien, *The Fellowship of the Ring*, at 182 (2d ed. 1965). Of those principles do I speak, the abuse of discretion test and the Doctrine of Separation of Powers. I would preserve both by keeping discretion with our trial judges, thereby casting jaundiced eye upon establishing child support by and through the rigidity of mathematical analysis. Equity is too springy to employ mathematical extrapolation of tables.

### ATTORNEY FEES

I concur fully with the statements contained in the majority opinion.

SABERS, Justice (dissenting in part and concurring in result in part).

I dissent because the child support award is wholly inadequate under the evidence in this record.

Under SDCL 25–7–7, when the obligor's net monthly income exceeds $1,500 the circuit court must exercise its discretion in setting the child support obligation. This discretion is not unfettered, but must have a sound basis in the evidence. *Havens v. Henning*, 418 N.W.2d 311 (S.D.1988). In *Havens*, the custodial parent petitioned the court to increase the father's child support obligation for two remaining minor children. The circuit court found that the father's net monthly income was $2,100 and increased the child support obligation to $334 per child per month or a total support award of $668. The award was challenged and upheld because of the increased net income of the father since the divorce, the increased cost of living, and the increased cost of raising children as they get older.

In this case, the trial court found that the defendant's gross monthly income was approximately $5,029 per month and that he had additional monthly income of $1,301.50 from the Worthington, Minnesota truck stop and a Ronning Enterprises project which the court refused to consider. The court awarded $665 per month as the total child support. This award was unreasonable because the defendant's net monthly income in this case is at least twice the amount of the net monthly income of the father in *Havens* and yet the child support award is $3.00 per month less.

The court also erred in failing to address the current financial needs of the minor children and disregarding the income of $1,301.50 from the Worthington and Ronning Enterprises projects. The majority opinion approves the trial court's omission on the claimed basis that "Gregory did not receive the rental or interest income, he was without power to guide the disposition of this income, and the expenditure of the income did not inure to his benefit." None of these statements have any real basis in fact and there is no proof in the record to support these positions. Gregory did receive the rental or interest income and he had power to guide the disposition of this income, and the expenditure of the income inured to his benefit.

SDCL 25–7–7 does not exclude these items, it includes them. As indicated in the majority opinion SDCL 25–7–7 defines monthly gross income to include, in pertinent part, "amounts received from the following sources: (2) Gain or profit from a business or profession, ... (4) Interest, dividends, rentals, royalties or other gain derived from investment of capital assets; ..." As further stated in the majority opinion, the statute goes on to provide that the court may allow or disallow deductions from a obligor's property as monthly gross income, which, although listed on the obligor's federal income tax return, do not require the disbursement of cash. Even if these funds were utilized to keep the truck stop in a reasonable state of repair, he received the income, he guided the disposition of this income, and the expenditure

inured to his benefit. Clearly this income does not qualify as a deduction under the statute and an obligor should not be able to avoid his lawful obligations simply by utilizing the funds to make repairs.

Exhibit 3, the 1986 United States individual income tax return of the father, is even more startling. Line 17 of Schedule D shows net long-term gain of $335,070. Only forty percent of this figure ($134,028) is subject to tax and appears on line 13 as "taxable" capital gain. This, and other income totaled $207,068 which, after an IRA deduction of $2,000 and $12,000 for alimony resulted in a "taxable" income or adjusted gross income of $193,068. In other words, the taxable income may have been under $200,000, but the real income for 1986 was almost $400,000.

For this court to limit the child support award to $332.50 per month per child is incredible. Strange as it may seem, this amount is near the poverty line for one person. It is even more incredible when one considers the father's real income for 1986 was $394,110. I would reverse and remand to the trial court to properly reconsider child support in accordance with South Dakota law and the guidelines set forth in SDCL 25–7–7. I also join Justice Morgan in that part of his concurrence in result in part regarding termination of alimony.

In addition, I would grant her petition for attorney's fees in the sum of $1,500 in accordance with *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985).

MILLER, Justice (dissenting in part, concurring in result in part).

I join Justice Morgan in that part of his special writing that concurs in the result on the issue dealing with termination of alimony.

I join Justice Sabers' dissent on the child support award issue.