BONITA GAIL ROOD, APPELLEE, AND STATE OF NEBRASKA, INTERVENOR–APPELLEE, v. HARRY BURRIEL ROOD, APPELLANT.

545 N.W.2d 138

Filed March 26, 1996.   No. A-94-960.

David L. Kimble for appellant.

C. Jo Petersen, Seward County Attorney, for intervenor-appellee.

MILLER–LERMAN, Chief Judge, and IRWIN and MUES, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Harry Burriel Rood appeals from an order of the district court for Seward County overruling his motion for new trial, following an order denying his petition to modify a dissolution decree. Because we find the district court properly refused to retroactively modify the decree and properly determined that there was insufficient evidence of emancipation, we affirm.

## II. FACTUAL BACKGROUND

Appellee Bonita Gail Rood and appellant, Harry Burriel Rood, were married in July 1969. There were two children of the marriage, John and Charity. John was born on May 9, 1971, and Charity was born on February 12, 1974. In February 1981, Bonita filed a petition for dissolution of her marriage to Harry. The decree of dissolution was entered in May 1981. The decree awarded custody of the children to Bonita and ordered Harry to pay $150 per month child support for each child. Bonita

assigned her interest in the child support payments to the Nebraska Department of Social Services in May 1981.

The record reflects that shortly after the dissolution, Harry moved to Michigan. Harry became delinquent on his child support payments, and contempt proceedings were initiated in Seward County in both October and December 1981.

Sometime in 1983, proceedings were initiated in Nebraska under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) to enforce the child support obligations of the Nebraska decree in Michigan. In August 1983, a stipulation and an order were entered in the circuit court for Gladwin County, Michigan, pursuant to the RURESA proceedings. The stipulation and order set support at $25 per week. The record indicates that no separate proceedings were initiated in Nebraska to modify the original decree.

Through 1993, Harry appears to have made relatively consistent payments as stipulated to in the Michigan order. The clerk of the district court for Seward County recorded and computed Harry's balance and arrearage in conformity with the Michigan order through November 1993. In November 1993, the records indicate the arrearage was approximately $3,000. In December 1993, the clerk entered a notation in the records which indicated that pursuant to a Nebraska "Supreme Court ruling 'Crow v Crow' arrears recalculated" under the provisions of the original decree, which computation resulted in an arrearage of approximately $36,000, including accrued interest. In January 1994, Harry received a letter from the Seward County District Court indicating that his monthly obligation under the original decree was to be $150 per month per child, regardless of what the Michigan order provided.

On March 4, 1994, Harry filed a petition for modification of the decree. Harry alleged that the Michigan order should govern his monthly support obligation, that he had consistently complied with the Michigan order, and that the Michigan order was never appealed from. Additionally, Harry alleged that one of the children, Charity, had filed an affidavit which demonstrated she was emancipated in July 1992, and Harry sought credit for any arrearages accruing after that time. Harry sought to have the Nebraska decree modified to be in

conformity with the Michigan order. At the time the petition for modification was filed, both of the children were above the age of 19 years, and Harry's obligation to support them had terminated. The modification action was brought to decrease the amount of arrearages.

On June 13, 1994, the case was tried to the district court. Harry, Harry's new wife, and a deputy clerk of the Seward County District Court were called to testify on Harry's behalf. Harry and his new wife both testified that they had understood the Michigan order as modifying his support obligation. They further testified that correspondence from the district court for Seward County had consistently reflected that his obligation was as reflected in the Michigan order. Harry also testified that he believed Charity had been emancipated in July 1992 because of an affidavit she had filed with the court. The deputy clerk testified that ledger cards, which reflect Harry's support payments and accrued arrearages, indicated an arrearage of approximately $3,000 in November 1993, but were amended to reflect a Nebraska Supreme Court case and showed an increased arrearage of approximately $36,000, including interest, after November 1993.

Bonita also testified at the hearing. She testified that she was unaware of the Michigan proceedings until 1990, "right after John's [19th] birthday," when Harry sought a reduction in his support obligation. She testified that she was not a party to the Michigan stipulation and order and that she did not receive any notice of the proceedings in Michigan. After hearing the testimony and receiving evidence, the court took the matter under advisement. On August 16, 1994, the court entered an order denying the petition for modification and denying Harry's request that Charity be found to have been emancipated in July 1992. Harry filed a motion for new trial, which was overruled by the court. This appeal followed.

### III. ASSIGNMENTS OF ERROR

In this appeal, Harry assigns four errors, which we have consolidated for discussion to three. First, Harry alleges the district court erred in not finding that the Michigan order acted to modify his support obligation. Second, Harry alleges the

court erred in failing to retroactively modify his support obligation under the original decree to conform to the Michigan order. Third, Harry alleges the court erred in finding that he failed to show Charity was emancipated in July 1992.

## IV. STANDARD OF REVIEW

An appellate court reviews proceedings for modification of a dissolution decree de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion. *Adrian v. Adrian*, 249 Neb. 53, 541 N.W.2d 388 (1995); *Welch v. Welch*, 246 Neb. 435, 519 N.W.2d 262 (1994); *Marr v. Marr*, 245 Neb. 655, 515 N.W.2d 118 (1994); *Muller v. Muller*, 3 Neb. App. 159, 524 N.W.2d 78 (1994).

## V. ANALYSIS

### 1. EFFECT OF MICHIGAN ORDER

On August 13, 1983, Harry entered into a stipulation with the prosecuting attorney for Gladwin County, Michigan, concerning the RURESA action. The stipulation set Harry's obligation for child support at $25 per week and required Harry to pay an additional $3 per week to be applied toward the arrearages. The circuit court for Gladwin County entered an order dated August 23 adopting the language of the stipulation as an order of the court. After the stipulation and order in Michigan, Harry appears to have made relatively consistent payments of support as set out in the stipulation and order. In his petition for modification of the original dissolution decree which gives rise to the instant appeal, Harry requested that the district court for Seward County modify the original decree to bring it into conformity with the Michigan order.

In 1983, the Nebraska Revised Statutes included a version of RURESA. See Neb. Rev. Stat. § 42–762 et seq. (Reissue 1988). Pursuant to RURESA, in a proceeding brought to enforce the support provisions of a Nebraska decree when the payor spouse lived in another state, Nebraska was defined as the "initiating state," and the other state was defined as the "responding state." See § 42–763. In the 1983 enforcement proceeding, Michigan was the responding state.

■ In a RURESA proceeding, to determine the effect of a responding state's support order on an original order of support, courts look to the antisupersession or antinullification clause of the responding state's version of RURESA. See *In re Appeal of Crow*, 242 Neb. 54, 493 N.W.2d 169 (1992). See, also, *In re Marriage of Kramer*, 253 Ill. App. 3d 923, 625 N.E.2d 808 (1993). In the present case, the effect of the Michigan order on the original Nebraska decree would be governed by the antisupersession clause of Michigan's version of RURESA. Neither party presented the issue of Michigan law, and neither party has provided us with any guidance on Michigan law. Under such a circumstance, we presume the law of Michigan to be the same as the law of Nebraska on the subject. *Gruenewald v. Waara*, 229 Neb. 619, 428 N.W.2d 210 (1988); *Buckingham v. Wray*, 219 Neb. 807, 366 N.W.2d 753 (1985); *Abramson v. Abramson*, 161 Neb. 782, 74 N.W.2d 919 (1956).

At the relevant time, § 42-792 provided in part:

A support order made by a court of this state pursuant to sections 42-762 to 42-7,104 shall not nullify and shall not be nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court.

Since we presume Michigan law at the relevant time was the same as the above statute, the Michigan order could not have nullified the support provisions of the Nebraska decree unless the Michigan court specifically provided that the order would nullify the previous Nebraska obligation. A review of the stipulation and order from the Michigan court reveals no indication that the court intended to nullify Harry's obligations under the Nebraska decree.

■ In RURESA proceedings, a responding court may fix support payments at a different amount than that specified by a decree rendered in the initiating state. *Dike v. Dike*, 245 Neb. 231, 512 N.W.2d 363 (1994). An order by a court in the responding state under RURESA enforces the *duty* of support, as distinguished from the *amount* of support decreed. *Dike,*

*supra.* Additionally, the remedies provided for in RURESA are *in addition to* and not *in substitution for* any other remedies. *Dike, supra.*

In the present case, the Michigan court enforced Harry's *duty* of support by ordering him to pay $25 per week in child support. The Michigan order did not in any way nullify, modify, or otherwise supersede the *amount* of support mandated by the original Nebraska decree, but instead provided an additional, supplementary remedy for Harry's delinquency in making his support payments.

The district court did not commit error by refusing to recognize the Michigan order as a modification of Harry's support obligations. Under the original decree, Harry's monthly support obligations continued to accrue at a rate of $150 per month for each child, regardless of the provisions of the Michigan enforcement order. This assigned error is without merit.

## 2. RETROACTIVE MODIFICATION

Harry requested the district court to retroactively modify the decree to bring his support obligation into conformity with the Michigan order. Harry requested the court, in ruling on his 1994 petition for modification, to retroactively modify the decree and reduce his monthly obligation as of 1983.

The rule in Nebraska is that a modification of a child support order is allowed prospectively from the time of the modification order itself. *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993); *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991); *Robbins v. Robbins*, 3 Neb. App. 953, 536 N.W.2d 77 (1995); *Hoover v. Hoover*, 2 Neb. App. 239, 508 N.W.2d 316 (1993).

When a divorce decree provides for the payment of stipulated sums monthly for the support of minor children, such payments become vested in the payee as they accrue, and courts are generally without authority to reduce the amounts of such accrued payments. *Id.* The Nebraska Supreme Court has, on occasion, depending on the equities involved, approved modification of a child support order retroactive *to the filing*

*date* of the application for modification. *Wulff, supra*; *Maddux, supra*.

In the present case, Harry's support obligation had ended over 1 year before he sought modification, because the younger child turned 19, although interest was continuing to accrue on the arrearages at the time of the hearing on his petition for modification. As a result, *any* modification which the district court would have entered would have been a prohibited retroactive modification. As such, the district court was correct in concluding it could not retroactively modify the decree and in denying Harry's petition for modification. This assigned error is without merit.

### 3. EMANCIPATION OF CHARITY

In February 1993, the younger child, Charity, filed an affidavit with the court indicating that she had been released from being a ward of the state in July 1992 and that she had not been receiving support from Bonita since that time and requesting that her child support payments be sent directly to her. In his petition for modification, Harry alleged that Charity was emancipated as of July 1992, and he sought a credit for arrearages accruing after that time. In ruling on Harry's petition for modification, the district court held that Harry "failed to show by the greater weight of the evidence emancipation of Charity Rood prior to February 12, 1993," which is when Charity turned 19 years of age.

### (a) Timeliness of Proceeding

In considering the propriety of the district court's ruling, we first begin by considering whether the court *may* cancel child support which accrued in the period between alleged emancipation and the subsequent application for modification. The initial question therefore is whether Harry, even assuming he could adequately prove emancipation in July 1992, is nevertheless obligated to pay support accruing after that time because the court is without authority to cancel such accrued support.

In *Wolter v. Wolter*, 183 Neb. 160, 158 N.W.2d 616 (1968), the Nebraska Supreme Court addressed this precise question in the context of alimony accruing in a period between the

receiving spouse's remarriage and the paying spouse's subsequent filing of a motion to terminate alimony. In *Wolter*, the decree provided for alimony to be payable until further order of the court and did not include a provision which would terminate the obligation upon the receiving spouse's remarriage. The Supreme Court identified the problem as being whether the trial court, if permitted to cancel such accrued alimony payments, would, in fact, be acting retrospectively upon vested rights. The *Wolter* court held that canceling accrued support payments would not amount to a retroactive modification of the alimony award.

The *Wolter* court held that the essential keystone supporting a decree for alimony was the continued unmarried status of the receiving spouse. As such, the receiving spouse's right to receive payments accruing after remarriage was discretionary with the court, and no vested right attached to the installments. *Wolter, supra.* Because the receiving spouse's vested right to receive support terminated upon remarriage, a fact justifying the termination of alimony upon application, the *Wolter* court held there was no justifiable reason to hold that the trial court had no power to relate its order back to the event giving rise to the right to terminate.

The reasoning and holding of *Wolter* were more recently adopted in New Hampshire, in the case *Williams v. Williams*, 129 N.H. 710, 531 A.2d 351 (1987). As the court in *Wolter* had determined, the court in *Williams* determined that cancellation of alimony accruing after the receiving spouse's remarriage was not analogous to a forbidden retroactive order.

The present case is analogous to *Wolter*. In the present case, Harry seeks to have the court cancel child support payments which accrued after an alleged emancipation but before Harry's subsequent petition for modification was filed. In the present case, the decree provided that Harry was to pay child support until, inter alia, the children became emancipated, so that a keystone supporting the accrual of support was the continuing unemancipated status of the children. The right to demand support cannot be said to constitute a vested right after emancipation in fact, and there is no justifiable reason to hold that the court lacks power to relate its order back to the

emancipation which would justify an order terminating the support obligation. See *Wolter, supra.*

### (b) Emancipation in Fact

Having determined that the district court had the authority to cancel any support obligations accruing during the period between alleged emancipation and the filing of the petition for modification, we must now determine whether the evidence was sufficient for a finding of emancipation in fact in July 1992, as Harry argues.

Whether or not a child has been emancipated is a question of fact, to be determined on the peculiar facts and circumstances of each case. *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993). The emancipation of a child may be proved by circumstantial evidence, by an express agreement, or by the conduct of the parties. *Accent Service Co., Inc. v. Ebsen*, 209 Neb. 94, 306 N.W.2d 575 (1981).

In the present case, Harry attempted to prove Charity was emancipated in July 1992 through an affidavit Charity had filed with the court. In the affidavit, Charity states that she was released as a ward of the state in July 1992 and that she has received no support from Bonita since then and requests that her child support payments be mailed directly to her. The only testimony at the hearing on Harry's petition for modification concerning the alleged emancipation was by Harry himself and consists merely of his allegation that he understands that she was emancipated in July 1992. The court judicially noticed the affidavit.

Neb. Rev. Stat. § 25–1244 (Reissue 1989) provides:

> An affidavit may be used to verify a pleading, to prove the service of a summons, notice or other process, in an action, to obtain a provisional remedy, an examination of a witness, a stay of proceedings, or upon a motion, and in any other case permitted by law.

The Nebraska Supreme Court has held that an affidavit cannot be used to establish facts material to the issue being tried, in the absence of a legislative exception. *Schaneman v. Wright*, 238 Neb. 309, 470 N.W.2d 566 (1991); *Doyle v. Union Ins. Co.*, 209 Neb. 385, 308 N.W.2d 322 (1981). As such, Charity's

affidavit should not have been used in the determination of her emancipation, which was clearly a material issue in the modification proceedings. Aside from the affidavit, there was *no* evidence presented to the district court upon which a finding of emancipation could have been based. The district court was correct in finding that Harry failed to establish emancipation, and this assigned error is without merit.

## VI. CONCLUSION

Because we find that the Michigan RURESA order did not modify the original decree, that the district court properly declined to retroactively modify the decree, and that the district court correctly concluded that Harry failed to establish emancipation of the child, we affirm.

AFFIRMED.