187 N.J. Super. 342 (1982)
454 A.2d 895
MARCIA EHRENWORTH, PLAINTIFF-RESPONDENT,
v.
LIONEL EHRENWORTH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1982.
Decided October 7, 1982.
Before Judges MILMED, MORTON I. GREENBERG and FURMAN.
Irving Tobin argued the cause for appellant (Gluck & Tobin, attorneys).
Charles M. DeFuccio argued the cause for respondent (Rose, Poley & DeFuccio, attorneys).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
*343 This matter comes before the court on an appeal from an order entered June 8, 1981 denying defendant's application to terminate alimony and vacate arrears.
The unusual circumstances giving rise to defendant's application must be set forth at length. Plaintiff and defendant were married on June 12, 1955. Four children were born of the marriage. In 1980 plaintiff's complaint and defendant's counterclaim for divorce were pending in the Superior Court, Chancery Division, Essex County. On March 13, 1980 the matter came on before the court for a conference on the issues of equitable distribution and alimony. Both parties were present with their respective attorneys. The record indicates that there had been extensive negotiations in court on that day and on other days. The record further shows that the parties had received advice from a certified public accountant. There had also been advice, apparently with respect to tax considerations, obtained from another attorney who was not an attorney of record. Ultimately the case was settled on March 13, 1980. The record makes it clear that the trial judge participated in the settlement negotiations. Indeed, both attorneys indicated that without the judge's assistance settlement would have been impossible.
After the matter was settled the terms of the settlement were placed on the record. The procedure followed was that plaintiff was sworn as a witness. Her attorney, in the presence of defendant, questioned her at length concerning the terms of the agreement. The following germane questions were asked of plaintiff and she gave the answers indicated:
Q Now, you understand that from the time the agreement is signed; and I think everything in the agreement takes place at the time of signing; formally executing this agreement; until then I guess you have the right to change it, but from the time this agreement is signed, for a period of 12 years you will receive each and every week the sum of $800.00 per week. That sum will be as enforced, alimony. You understand that you will receive that sum of $800.00 per week, whether you remarry or don't remarry, no matter what your situation, no matter what your circumstances. However, at the end of that 12-year period, *344 your husband's obligation as to support to you, will end. Under no circumstances will you be entitled to any money after that 12-year period. That $800.00 will be paid to you each and every week regardless of your circumstances; health, income, earnings, or anything else, do you understand that?
A I understand that.
Q Do you understand that should you die you have the right to leave whatever remainder there might be of that $800.00 per week to your estate or designate any beneficiary you want, or should you die without a will, or die intestate, that it would go according to the law as contested [sic]. In other words, that's your money for those 12 years, payable as we stated. That is the extent of Doctor's obligation, do you understand that?[1]
A I understand.
Q Now, isn't it also a fact that you've agreed that you will not come back into court for an increase or a decrease? This is the deal; this is what you're to receive as far as alimony is concerned. We, on the other hand, also expect that Doctor is going to pay this money. His deal is that he will pay this $800.00. He will pay it this year, and he will pay it for 12 years. He's not coming back into court. You two have made a deal, no matter what your income, no matter what your assets, you're going to get this money, and he's going to pay that, isn't that right?
A I understand. Yes, that's right.
There were, of course, other terms to the settlement. Significantly, plaintiff agreed to turn over to defendant whatever interest she had in a certain medical building. The parties also divided personal property.
After plaintiff's testimony was completed defendant testified. Rather than examining him at length, his attorney asked him if he understood the agreement as it had been stated and whether he agreed to be bound by it. He said he did understand it and would be bound. He also testified that he entered into the agreement freely, without coercion or duress, and that he had been represented by counsel. The proceedings on March 13, 1980 were terminated with the understanding that a written agreement would be prepared.
The written agreement was in fact prepared and signed by the parties. It was dated July 3, 1980. The agreement in pertinent part provides as follows:

*345 1. The parties both agree that under no circumstances will either of them at any time petition any Court to reopen the Property Settlement and Support Agreement orally entered on March 13, 1980 and memorialized herein alleging that either of them did not have total formal discovery in the within matter.
2. The parties have further agreed that from the date of the execution of the within memorialization of the parties' oral Property Settlement and Support Agreement as evidenced on this page of the within Agreement, the Husband shall pay to the Wife the sum of Eight Hundred Dollars ($800.00) per week, each and every week, as alimony, for a period of twelve (12) consecutive years. Said $800.00 per week alimony payment by the Husband to the Wife shall be paid to her by the Husband regardless of whether or not the Wife remarries, and regardless of her financial circumstances, health, income, or earnings.
However, in the event the Wife dies prior to the expiration of said twelve-year period, the Husband's obligation to pay said alimony to the Wife ceases and shall not be an asset of her estate.
The Wife agrees that she will maintain a certain life insurance policy owned by her and insuring the life of the Husband, which has a face amount of Three Hundred Thousand Dollars ($300,000). (A copy of said insurance policy is attached to the within memorialization of the parties' oral Agreement). The Wife agrees that she will continue to pay said life insurance premium payments and keep said premium payments current for as long as she receives alimony in the amount as stated herein and to the extent as is necessary to maintain said life insurance policy in existence as it now exists.
Should the Husband die prior to the expiration of the 12-year alimony period as mentioned herein, then and in that event, using the proceeds of said policy, which policy will be maintained on the minimum deposit basis by the Wife (or should said policy lapse, giving the Husband's estate full credit as if the proceeds had been received by the Wife pursuant to said policy's payment schedule on a minimum deposit payment schedule), the Husband's estate shall be liable for the balance, if any, still due the Wife on her 12-year payout after deducting full credit for any and all proceeds received by her, or any and all proceeds that should have been received by her from said insurance policy.
It is understood and agreed by both parties that neither of them shall petition any Court in regard to an increase or decrease in the amount of alimony paid or received by them. This waiver is made by both parties despite any future increase or any future change in either of their circumstances, ordinary, circumstantial, anticipated, unanticipated, keeping in mind the possibility of inflation and depression. Both parties agree to pay or accept payments respectively as mentioned herein, under any circumstances.
The matter came on for trial on July 7, 1980. The parties were granted mutual divorces. The final judgment, to which defendant's attorney consented as to form and entry, also provided that
IT IS FURTHER ORDERED AND ADJUDGED that a certain written Property Settlement and Support Agreement dated July 3, 1980, a copy of which is *346 attached hereto, which Property Settlement and Support Agreement was voluntarily entered into by the parties and reduced to writing to memorialize the parties' prior oral Property Settlement and Support Agreement dated March 13, 1980, be and the same is incorporated but not merged in the within Judgment;
The next proceedings in the matter were generated by plaintiff on April 10, 1981. At that time plaintiff moved for relief to litigant. In her supporting affidavit she stated that defendant had discontinued payment of alimony. Defendant filed a cross-motion. He sought to terminate alimony and to vacate arrears. Defendant's appendix does not include the certification submitted with the motion but it is evident from the transcript on the motion that his basis for relief was that plaintiff had remarried and thereby, by reason of N.J.S.A. 2A:34-25, was precluded from recovering further alimony from defendant. Plaintiff filed an answering certification in which she pointed out that there had been many settlement conferences with the judge and that there had been numerous conferences among the lawyers and accountants in the case.
The motions were heard on May 22, 1981 by the same judge who had conducted the settlement conferences. The same attorneys who had represented the parties when the settlement had been reached were present in court. Defendant's attorney argued that under N.J.S.A. 2A:34-25 defendant was entitled to have alimony stopped and arrears canceled. N.J.S.A. 2A:34-25 provides:
If after the judgment of divorce the wife shall remarry, the court shall not make any order as to the alimony of such wife except that upon application of the former husband, on notice and on proof of the marriage of the former wife after the judgment of divorce, the court shall modify any order or judgment as to the alimony of the former wife by vacating and annulling any and all provisions in any such order or judgment, or both, directing the payment of money for the support of the former wife.
The judge denied defendant's motion. He pointed out that the court had participated in the settlement negotiations. He indicated that tax accounting was of great importance and that "the parties clearly have the right to set up agreements which call for alimony regardless of whether or not the wife remarries because of the tax ramifications of alimony." He stated that:

*347 I participated in this settlement without question that 800 per week over a twelve year period, as I recall it, is that correct, was part of the settlement of this matter. There was a  it was written in terms of alimony so that the doctor in addition to having a payout of 800 a week over a period of time in regard to the equitable distribution would get the benefit of alimony deductions on his income tax return so long as his wife did not remarry.
We obviously could not control the remarriage plans of his wife and there was a specific suggestion during the settlement conferences of that matter, although it's not on the record in regard to when the agreement itself was placed on the record. And I may very well end up a witness in this case.
But, clearly, it was intended as a settlement, it was intended that as long as the wife did not remarry, the husband would get the benefit of alimony deductions and that if she did remarry, the payments would continue anyway. The statement in the agreement says so specifically and this statute was not intended to prevent parties from entering into those types of agreements. I think the cases are clear.
The judge later noted:
If the money that the agreement says truly was solely alimony, the statement by the parties in this agreement that the payments shall continue regardless of whether or not she remarried and regardless of her financial or economic conditions, which I think is the language is as clear as an indication could be, even if I hadn't been in the room, Mr. Tobin, that was the intention of the parties in this case; but it was not alimony in the sense of that statute, it was clearly alimony for tax purposes. But even beyond that, I was there, Mr. Tobin.
The judge's precise holding was that N.J.S.A. 2A:34-25 does not bar contrary agreements. On June 8, 1981 the judge signed an order denying defendant's motion and making other determinations not germane to this appeal. The order further compelled defendant to pay arrears. Defendant then appealed from that order. Defendant moved for a stay pending appeal. We denied his motion.
The parties cited no case definitively holding whether or not N.J.S.A. 2A:34-25 precludes them from coming to an agreement that the obligation to pay alimony may survive remarriage. Unquestionably, the courts have indicated that the statute was enacted in recognition of the strong public policy against enforcing support orders on behalf of remarried former wives. See Stein v. Fellerman, 144 N.J. Super. 444, 451-452 (App.Div. 1976), certif. den. 73 N.J. 50 (1977). Yet in Jones v. Jones, 163 N.J. Super. 442 (App.Div. 1978), in discussing N.J.S.A. 2A:34-25, we stated:

*348 The provisions of this statute are mandatory. Ferreira v. Lyons, 53 N.J. Super. 84, 86-87 (Ch.Div. 1958). "There is no question but that a valid second marriage extinguishes a wife's right to alimony from her first husband." Flaxman v. Flaxman, 57 N.J. 458, 461 (1971). As noted above, the "oral agreement" is silent on the question of plaintiff's remarriage. There being no contrary intention expressed in that `agreement,' plaintiff's remarriage on January 22, 1977 terminated defendant's obligation thereunder to support her. [at 444]
It is thus obvious that in Jones we contemplated that the parties could vary the effect of the statute. See, also, Richards v. Richards, 139 N.J. Super. 207, 212 (Ch.Div. 1972).
N.J.S.A. 2A:34-25 explicitly neither precludes nor permits parties to vary its terms. Yet it seems quite clear that the statute was intended to deal with cases in which alimony was determined in an adversary proceeding by a court. The section is a portion of article 6 of chapter 34 of Title 2A of the Revised Statutes. Chapter 34 deals generally with matrimonial matters. Article 6 was originally concerned with alimony, support and maintenance. It now also governs equitable distribution. The first section of article 6, N.J.S.A. 2A:34-23, specifies the circumstances in which a court may award alimony. Thus, N.J.S.A. 2A:34-25 is intended to provide that if the court has awarded alimony, then upon the wife's remarriage the alimony must cease.[2]
This is not to say, of course, that the fact that the judgment incorporates a settlement agreement precludes the operation of N.J.S.A. 2A:34-25. Quite to the contrary, the section does include alimony paid pursuant to a settlement incorporated in a judgment where the agreement is silent on the consequence of remarriage. See Jones v. Jones, supra, 163 *349 N.J. Super. at 442; Stein v. Fellerman, supra, 144 N.J. Super. at 451-454. What we do say is that the section simply did not deal with a situation in which the parties made an agreement not compatible with its terms.
We see no reason in public policy why the agreement should not be enforced. The parties voluntarily agreed upon its terms in proceedings of the greatest formality. If the payments were to be treated by the parties as installments on a fixed obligation as opposed to alimony, it cannot be doubted that defendant would be denied relief since N.J.S.A. 2A:34-25 deals only with alimony. We do not see why the fact that for perceived tax advantages the parties preferred to call the payments alimony should have a bearing on the outcome of this litigation. Enforcement of N.J.S.A. 2A:34-25 in the circumstances of this case would work an unconscionable result relieving defendant of his freely bargained-for obligation and depriving plaintiff of the benefit for which she negotiated. In negotiating this agreement she thereby forewent the possibility of obtaining other considerations from defendant.
In fact, public policy requires that this agreement be enforced. The agreement was reached in settlement of litigation. In Honeywell v. Bubb, 130 N.J. Super. 130 (App.Div. 1974), we announced:
Embedded in our jurisprudence is the principle that the settlement of litigation ranks high in our public policy. Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 35 (1957), cited with approval in Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App.Div. 1961), certif. den. sub nom. Jannarone v. Calamoneri, 35 N.J. 61 (1961). As the court said in Carlsen v. Carlsen, 49 N.J. Super. 130 (App.Div. 1958).
"Since stipulations in court made by attorneys when acting within the scope of their authority are enforceable against their clients certainly, stipulations by attorneys and their clients before the court and in the record must, a fortiori be enforceable. * * * [at 137]"
Thus, barring fraud or other compelling circumstances, our courts strongly favor the policy that the settlement of litigation be attained and agreements thereby reached, be honored. See DeCaro v. DeCaro, 13 N.J. 36, 41-42 (1953), where the court found that appellant therein had failed to establish fraud, mutual mistake, undue haste, pressure or unseemly conduct in settlement negotiations. [at 135-136]
*350 Further, the Supreme Court recently stated, in Petersen v. Petersen, 85 N.J. 638 (1981):
We have recognized and emphasized repeatedly that matrimonial agreements between spouses relating to alimony and support, which are fair and just, fall within the category of contracts enforceable in equity. Carlsen v. Carlsen, 72 N.J. 363, 370-371 (1977); Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970); Schlemm v. Schlemm, 31 N.J. 557, 581-582 (1960). Such agreements are essentially consensual and voluntary in character and therefore entitled to considerable weight with respect to their validity and enforceability notwithstanding the fact that such an agreement has been incorporated in a judgment of divorce. [at 642]
The result we reach finds support elsewhere. In Perry v. Perry, 551 P.2d 256 (Okl.Sup.Ct. 1976), the court held that even though under Oklahoma statutory law alimony for a wife ordinarily terminated upon her remarriage, the husband may by voluntary agreement waive his right to such a termination. In Gush v. Gush, 14 Misc.2d 146, 178 N.Y.S.2d 429 (Sup.Ct. 1958), aff'd 9 App.Div.2d 815, 192 N.Y.S.2d 678 (App.Div. 1959), the trial court held that an agreement for support and maintenance of a wife could by consent survive her remarriage and be enforceable. The court, in language completely applicable here, said:
Section 1172-c of the Civil Practice Act provides that on proof of the marriage of the wife after a final judgment of divorce any judgment or orders directing payments of money for the wife's support `must' on application be annulled. But public policy does not strike down contracts in which, as a part of the agreement, the husband has assumed obligations supplementing the obligation arising from the matrimonial relation by agreeing to make payments to the wife after her marriage or during her natural life. [14 Misc.2d 148; 178 N.Y.S.2d at 431][3]
We point out, of course, that we do not pass upon the tax aspects of this case. The order of June 8, 1981, insofar as appealed, is affirmed.
NOTES
[1] The provision for payment to the estate or beneficiary in the event of plaintiff's death was modified later on the record to provide for termination of alimony upon her death.
[2] When article 6 was enacted, N.J.S.A. 2A:34-23 made no provision for alimony for a husband. However, by L. 1971, c. 212, the section was amended to permit either party to obtain alimony. N.J.S.A. 2A:34-25 has not been amended to provide that the remarriage of a husband receiving alimony will terminate the wife's obligation to him. We assume that if this issue is ever litigated the court will avoid equal protection problems by construing the section so that remarrying husbands and wives are treated equally. Nevertheless, clarifying legislation would be helpful.
[3] The court modified the final judgment of divorce to annul the alimony provisions. See 13 Misc.2d 1014, 179 N.Y.S.2d 160 (Sup.Ct. 1958). We see no practical distinction between allowing the wife to recover on the agreement rather than the judgment. In any event, in our case the judgment of divorce provided that the settlement agreement was not merged into the judgment.