T.C. Memo. 1996-298


UNITED STATES TAX COURT


NORMAN SPECTOR AND MARCIA SPECTOR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

LIONEL EHRENWORTH AND BETH EHRENWORTH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 20102-91, 21548-91.[1]          Filed June 26, 1996.


<u>Robert J. Alter</u> and <u>Richard J. Sapinski</u>, for petitioners
Norman Spector and Marcia Spector.

<u>Stephen H. Skoller</u> and <u>Stephen E. Lampf</u>, for petitioners
Lionel Ehrenworth and Beth Ehrenworth.

<u>Craig Connell</u>, for respondent.


---

[1] These cases were consolidated for trial, briefing, and
opinion.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows:

<u>Norman and Marcia Spector</u>

| | | | Additions to Tax | |
| | | Sec. | Sec. | Sec. |
| <u>Year</u> | <u>Deficiency</u> | <u>6653(a)(1)(A)</u> | <u>6653(a)(1)(B)</u> | <u>6661(a)</u> |
| 1986 | $15,117 | $756 | [2] | $3,779 |
| 1987 | 16,043 | 802 | [2] | 3,845 |
| 1988 | 9,580 | [1]479 | -- | 2,395 |

<u>Lionel Ehrenworth</u>

| | | | Additions to Tax | |
| | | Sec. | Sec. | Sec. |
| <u>Year</u> | <u>Deficiency</u> | <u>6653(a)(1)(A)</u> | <u>6653(a)(1)(B)</u> | <u>6661(a)</u> |
| 1986 | 26,005 | 1,300 | [2] | 6,501 |
| 1987 | 20,610 | 1,031 | [2] | 5,153 |

<u>Lionel and Beth Ehrenworth</u>

| | | Additions to Tax | |
| <u>Year</u> | <u>Deficiency</u> | <u>Sec. 6653(a)(1)</u> | <u>Sec. 6661(a)</u> |
| 1988 | 11,648 | 582 | 2,912 |

[1] Sec. 6653(a)(1) applied in 1988.
[2] Fifty percent of the interest due on the portion of the underpayment attributable to negligence.

Petitioners Marcia Spector and Lionel Ehrenworth were divorced in 1980. Petitioners filed cross-motions for partial summary judgment relating to whether payments made by Dr. Ehrenworth to Mrs. Spector after their divorce were alimony or a property settlement. We denied both motions. <u>Spector v. Commissioner</u>, T.C. Memo. 1994-147. We held that whether a

payment is alimony under section 71(a)(1) is determined by considering all the facts and circumstances, and not solely by reference to how it is characterized by the separation agreement or by reference to State law.

After concessions,[2] the issues for decision are:

1.    Whether payments Dr. Ehrenworth made to Mrs. Spector in 1986, 1987, and 1988 were alimony or a property settlement.  We hold that they were in part alimony and in part a property settlement.

2.    Whether Dr. Ehrenworth is liable for additions to tax for 1986 and 1987 for negligence under section 6653(a) with respect to claimed dependency exemption deductions.  We hold that he is.

3.    Whether the Spectors are liable for an addition to tax for 1986 for negligence under section 6653(a) with respect to a claimed dependency exemption deduction.  We hold that they are not.

References to petitioners are to the Spectors and the Ehrenworths.  References to Mrs. Spector are to Marcia Spector. References to Dr. Ehrenworth are to Lionel Ehrenworth.  Unless otherwise indicated, section references are to the Internal

---

[2] Respondent concedes that petitioners are not liable for additions to tax for negligence or substantial understatement for 1986, 1987, and 1988 for any deficiencies related to the characterization of the payments from Dr. Ehrenworth to Mrs. Spector.

Revenue Code in effect for the years at issue. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

A. Background

Mrs. Spector (formerly Mrs. Ehrenworth) and Dr. Ehrenworth were married in June 1955. They had four children (Richard, Andrew, Robert, and Douglas). They filed cross-motions for divorce around 1977. Mrs. Spector and Dr. Ehrenworth settled the property distribution and alimony issues at a conference before the Superior Court of New Jersey, Chancery Division, Essex County on March 13, 1980.

Dr. Ehrenworth earned a large amount of income while he was married to Mrs. Spector. She earned little or no income during those years.

The Ehrenworths lived in New Jersey, and the Spectors lived in California, when they filed their petitions.

B. The Property Settlement

On July 3, 1980, Mrs. Spector and Dr. Ehrenworth signed a "Property Settlement and Support Agreement" (the support agreement). In it, among other things, Mrs. Spector waived all rights she had to any interest in Dr. Ehrenworth's pension fund and medical practice. She also conveyed by deed any interest she had in a medical building and any rights she had to shares in the Phoenix Corp. The Phoenix Corp. is an inactive company that has never had any assets. Dr. Ehrenworth agreed to pay Mrs. Spector

$224,450 on July 3, 1980, and $100,000 by August 1, 1980, for certain objects of art. Dr. Ehrenworth agreed to pay $7,000 per year to support Richard and Andrew until they began their post-high-school education or were emancipated. At the time of the settlement, Richard was 11 and Andrew was 15.

Dr. Ehrenworth agreed to pay Mrs. Spector $800 per week for 12 years regardless of Mrs. Spector's financial circumstances, income, or health and regardless of whether Dr. Ehrenworth's or Mrs. Spector's financial circumstances changed. They agreed that the payments would cease if Mrs. Spector died but not if she remarried. Their support agreement stated that these payments were alimony. Mrs. Spector agreed to maintain a life insurance policy on the life of Dr. Ehrenworth which had a face value of $300,000. If Dr. Ehrenworth died before making all the weekly payments to Mrs. Spector, he agreed that his estate would pay the balance, less the insurance proceeds Mrs. Spector received. The weekly payments provision was the only provision for support in the support agreement.

Dr. Ehrenworth and Mrs. Spector negotiated the division of their marital assets. They then used the weekly payments both to achieve an acceptable division of their marital assets and to provide support for Mrs. Spector.

Mrs. Spector and Dr. Ehrenworth were divorced on July 7, 1980. The judgment of divorce provided that the:

Property Settlement and Support Agreement dated
July 3, 1980, a copy of which is attached hereto,
which Property Settlement and Support Agreement was
voluntarily entered into by the parties and reduced to
writing to memorialize the parties' prior oral Property
Settlement and Support Agreement dated March 13, 1980,
be and the same is incorporated but not merged in the
within Judgment * * *

C.    Payments to Mrs. Spector

Dr. Ehrenworth made the payments on Fridays at

Mrs. Spector's request so that she could plan her week.

Mrs. Spector married Norman Spector on August 23, 1980.

After that time, Dr. Ehrenworth stopped paying Mrs. Spector the

$800 per week.  On April 10, 1981, Mrs. Spector filed a motion in

New Jersey Superior Court to compel Dr. Ehrenworth to continue

paying $800 per week to her.  Dr. Ehrenworth filed a cross-motion

to terminate these payments and to vacate arrearages.  He argued

that the payments were alimony and that Mrs. Spector could not

continue to recover alimony under N.J. Stat. Ann. sec. 2A:34-25

(1987)[3] because she had remarried.

---

[3] N.J. Stat. Ann. sec. 2A:34-25 (1987) provides:

If after the judgment of divorce the wife shall
remarry, the court shall not make any order as to the
alimony of such wife except that upon application of
the former husband, on notice and on proof of the
marriage of the former wife after the judgment of
divorce, the court shall modify any order or judgment
as to the alimony of the former wife by vacating and
annulling any and all provisions in any such order or
judgment, or both, directing the payment of money for
the support of the former wife.

In 1988, New Jersey revised the statute to be gender
neutral, among other things.

On April 1, 1981, Mrs. Spector filed a certification in support of her motion to compel Dr. Ehrenworth to make the weekly payments in which she referred to the payments as "alimony". On May 6, 1981, Mrs. Spector filed a second certification in which she referred to the weekly payments as "alimony". On December 23, 1981, Mrs. Spector filed a third certification in which she referred to the weekly payments as "support".

The judge who had handled the divorce case and conducted the settlement negotiations decided the motions. He granted Mrs. Spector's motion. Dr. Ehrenworth appealed. On October 7, 1982, the Appellate Division of the Superior Court affirmed the lower court's ruling. Ehrenworth v. Ehrenworth, 187 N.J. Super. 342, 347, 454 A.2d 895 (App. Div. 1982). The Appellate Division stated:

> [The New Jersey statute] is intended to provide that if the court has awarded alimony, then upon the wife's remarriage the alimony must cease.
>
>         *     *     *     *     *     *     *
>
> We see no reason in public policy why the agreement should not be enforced. The parties voluntarily agreed upon its terms in proceedings of the greatest formality. If the payments were to be treated by the parties as installments on a fixed obligation as opposed to alimony, it cannot be doubted that * * * [Dr. Ehrenworth] would be denied relief since * * * [the New Jersey statute] deals only with alimony. We do not see why the fact that for perceived tax advantages the parties preferred to call the payments alimony should have a bearing on the outcome of this litigation. Enforcement of * * * [the New Jersey statute] in the circumstances of this case would work an unconscionable result relieving * * * [Dr. Ehrenworth] of his freely bargained-for obligation and depriving plaintiff of the benefit for which she negotiated. In negotiating this agreement * * *

[Mrs. Spector] thereby forewent the possibility of obtaining other consideration from * * * [Dr. Ehrenworth].  [Id. at 348-349, 454 A.2d at 899; fn. ref. omitted.]

Dr. Ehrenworth paid Mrs. Spector $41,600 in 1986 and $41,600 in 1987 in accordance with the support agreement.  In 1988, Dr. Ehrenworth paid $40,000 ($800 per week for 50 weeks).  Dr. Ehrenworth deducted the payments from his gross income for the years in issue.  Mrs. Spector did not include the payments in her gross income.

D.   Exemptions

The Spectors claimed exemptions for Robert, Andrew, and Richard in 1986, and for Richard in 1987.  Dr. Ehrenworth claimed exemptions for Robert, Andrew, and Richard in 1986 and 1987.  The Ehrenworths claimed an exemption for Richard in 1988.

Mrs. Spector had custody of Robert, Andrew, and Richard after her divorce from Dr. Ehrenworth.  The support agreement states that Dr. Ehrenworth may claim Douglas and Richard as exemptions, and Mrs. Spector may claim Andrew and Robert as exemptions.

The parties agree that petitioners (the Spectors and the Ehrenworths) may not claim an exemption for Robert for the years in dispute, that the Spectors may claim an exemption for Andrew for 1986, and that Dr. Ehrenworth may not claim an exemption for Andrew for 1986 or 1987.  Dr. Ehrenworth did not establish that he provided more than $600 to support Richard in 1986, 1987, or 1988.  The parties also agree that the Spectors (and not

Dr. Ehrenworth or the Ehrenworths) may claim an exemption for Richard for 1986, 1987, and 1988 because Dr. Ehrenworth did not establish that he provided the requisite amount of support for Richard in those years.

Dr. Ehrenworth's attorney, Irving Tobin, explained the support agreement to Dr. Ehrenworth.  Dr. Ehrenworth understood that he agreed not to claim Andrew and Robert as exemptions.

The Spectors supported Andrew in 1986, and Richard in 1986, 1987, and 1988.  The Spectors provided $48 to support Robert in 1986, $6,400 in 1987, and $2,613 in 1988.

OPINION

A.  Whether Payments From Dr. Ehrenworth to Mrs. Spector Were Alimony

1.  Introduction

The first issue for decision is whether payments from Dr. Ehrenworth to Mrs. Spector in 1986, 1987, and 1988 were alimony or a property settlement.  A former spouse must include in gross income periodic payments received as alimony or separate maintenance.  Sec. 71(a);[4] Brown v. Commissioner, 50 T.C. 865,

---

[4] Sec. 71(a)(1) provides:

(1)  Decree of Divorce or Separate Maintenance.-- If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree

(continued...)

867-868 (1968), affd. 415 F.2d 310 (4th Cir. 1969). Payments which are a property settlement are not taxable to the recipient under section 71. <u>Estate of Smith v. Commissioner</u>, 208 F.2d 349, 351 (3d Cir. 1953), affg. in part and revg. in part a Memorandum Opinion of this Court dated Nov. 28, 1952; <u>Yoakum v. Commissioner</u>, 82 T.C. 128, 134 (1984); <u>Thompson v. Commissioner</u>, 50 T.C. 522, 525 (1968). A taxpayer may deduct amounts paid to a former spouse if those payments are includable in the former spouse's gross income under section 71. Sec. 215; <u>Yoakum v. Commissioner</u>, <u>supra</u>.

If the payments in these cases are alimony, then Dr. Ehrenworth may deduct the payments under section 215(a), and Mrs. Spector must include the amounts in income under section 61(a)(8). However, if the payments are a property settlement, Dr. Ehrenworth may not deduct them and Mrs. Spector need not include them in income.

_____

[4](...continued)
or under a written instrument incident to such divorce or separation.

Secs. 71 and 215 were amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422(a) and (b), 98 Stat. 795. The 1984 amendments apply to divorce or separation instruments executed after Dec. 31, 1984, and instruments modified on or after Jan. 1, 1985, if the modification provides that the 1984 amendments govern.

Mrs. Spector and Dr. Ehrenworth were divorced in 1980. The record does not indicate that they amended the separation agreement or the divorce decree to provide that the 1984 amendments govern. Thus, the 1984 amendments to secs. 71 and 215 do not apply here.

2.  Contentions of the Parties

Dr. Ehrenworth argues that the payments are alimony because the agreement said the payments were alimony and the New Jersey courts enforced the agreement.  He points out that the agreement does not say that the payments ceased being alimony when Mrs. Spector remarried.

Mrs. Spector argues that the postremarriage weekly payments are not alimony for tax purposes because, under New Jersey law, courts may not order alimony to be paid after the remarriage of the recipient of the payments.  N.J. Stat. Ann. sec. 2A:34-25.

Respondent argues that we should allocate the payments between alimony and a property settlement.  Dr. Ehrenworth testified that the marital estate was worth about $2 million, and that he received about 55 percent of the estate without considering the weekly payments.  Respondent contends that Dr. Ehrenworth received about $200,000 (the difference between $1.1 million (55 percent of the marital assets) and $900,000 (45 percent)) more than Mrs. Spector.  Respondent points out that, to equally divide the assets, Dr. Ehrenworth would have had to pay Mrs. Spector half of the excess he received; i.e., $100,000.  Under the agreement, the weekly payments totaled $499,200 ($800/week times 52 weeks times 12 years).  Respondent argues that we should allocate about 20 percent ($100,000/$499,200) of

the weekly payments to property settlement and 80 percent to alimony.[5]

### 3. The Nature of the Payments

In deciding the character of an award in a divorce or separation decree, great weight is given to the language and structure of the decree. Griffith v. Commissioner, 749 F.2d 11, 13 (6th Cir. 1984), affg. T.C. Memo. 1983-278. The decision whether payments are in the nature of support or a property settlement, however, is not controlled by the labels assigned to the payments by the court in the divorce decree or by the parties in their agreement but, instead, depends on all of the facts and circumstances. Yoakum v. Commissioner, supra at 140; Beard v. Commissioner, 77 T.C. 1275, 1283-1284 (1981); Gammill v. Commissioner, 73 T.C. 921, 926-927 (1980), affd. 710 F.2d 607 (10th Cir. 1982); Hesse v. Commissioner, 60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975).

In deciding whether payments are a property settlement or alimony, we have considered whether: (a) The recipient surrendered valuable property rights in exchange for the payments; (b) the parties intended the payments to effect a division of their assets; (c) the amount of the payments plus the

---

[5] Sec. 71(c)(2), which applies to divorce instruments executed before 1985, designates certain payments which are made over a period of more than 10 years as periodic and thus taxable to the recipient to the extent of 10 percent of the principal sum. Dr. Ehrenworth made payments to Mrs. Spector for 12 years, under the terms of the agreement. Respondent did not argue and we do not address the applicability of that section.

other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during marriage; (d) the payments are fixed in amount and not subject to contingencies, such as the death or remarriage of the recipient; (e) the payments are secured; (f) the needs of the recipient were taken into consideration in determining the amount of the payments; (g) the payments are related to the obligor's income; (h) there is a separate provision for support elsewhere in the agreements; and (i) the State court characterized the payments as alimony or a property settlement. Riley v. Commissioner, 649 F.2d 768, 774 (10th Cir. 1981), affg. T.C. Memo. 1979-237; Beard v. Commissioner, 77 T.C. 1275, 1284-1285 (1981); Widmer v. Commissioner, 75 T.C. 405, 409 (1980).

a. Whether Mrs. Spector Surrendered Valuable Property Rights

Mrs. Spector argues that she surrendered valuable property rights in Dr. Ehrenworth's pension, Dr. Ehrenworth's medical practice, the couple's art collection, the medical building, the Phoenix Corp., and the home Dr. Ehrenworth built in Watchung, New Jersey, in exchange for the weekly payments. We disagree that she surrendered those rights in exchange for the weekly payments.

Both spouses surrendered rights to marital assets when they settled the property issues. They used the weekly payments both to achieve an acceptable division of their marital assets and to provide support for Mrs. Spector. However, the record does not

show that Mrs. Spector surrendered property rights in exchange for the payments.

Mrs. Spector claims that various assets were improperly included or excluded from the division of their marital assets. We think her argument misses the mark. We do not decide here whether the assets were equally divided; we only consider what Dr. Ehrenworth and Mrs. Spector intended when they negotiated the property settlement and weekly payments.

Mrs. Spector contends that Dr. Ehrenworth conceded that she surrendered property rights in the marital estate in exchange for the weekly payments. We disagree. Dr. Ehrenworth merely acknowledged that she surrendered rights to property in exchange for his agreement that the payments would continue even if she remarried.

We conclude that Mrs. Spector did not surrender valuable property rights in exchange for the weekly payments. This factor favors treating the payments as alimony.

b. <u>Whether Mrs. Spector and Dr. Ehrenworth Intended the Payments To Effect a Division of Their Assets</u>

Mrs. Spector argues that she and Dr. Ehrenworth intended that the weekly payments would result in an equal division of the marital property. She argues that, without the weekly payments, she would have received less than one-half of the marital property. She contends that she agreed to receive the payments for 12 years to complete the equitable distribution of the

marital estate and because of Dr. Ehrenworth's liquidity problems. Dr. Ehrenworth maintains that he and Mrs. Spector split the marital assets almost equally without considering the weekly payments.

The record contains little evidence of the total value of the marital estate. Except for the artwork, which was appraised by Sotheby Parke Bernet in June 1979, and the cash payments to Mrs. Spector, the values of marital assets stated at trial are unsupported by documentary evidence. For example, Mrs. Spector received the marital home, but there is no credible evidence of its value at the time she and Dr. Ehrenworth divorced. Also, in estimating the value of the home, Dr. Ehrenworth did not consider the mortgage on the home which Mrs. Spector assumed. Similarly, under the agreement, Dr. Ehrenworth and Mrs. Spector each kept jewelry, but there is no evidence of its value. Dr. Ehrenworth and Mrs. Spector's testimony concerning the division of the marital assets was contradictory. Tobin testified that they split their assets equally, but he stated that the division of assets did not include Dr. Ehrenworth's medical practice.

Dr. Ehrenworth testified that he got about 55 percent of the marital estate. We treat this as his concession that he received 55 percent of the marital assets. However, Mrs. Spector has not proven that she got less than 45 percent of the marital estate. This factor is neutral.

c.    Whether the Weekly Payments and Other Property Awarded
      to Mrs. Spector Equaled One-Half of the Marital Estate

As discussed in paragraph A-3-a, Dr. Ehrenworth and

Mrs. Spector used the weekly payments to achieve an acceptable

division of their marital assets and to provide support for Mrs.

Spector.  The record shows that Mrs. Spector received somewhat

more than one-half of the marital estate in the form of the

weekly payments and other marital property awarded to her.  This

factor is neutral.

d.    Whether the Weekly Payments Were Fixed in Amount and
      Subject to Contingencies

The payments were fixed in amount and duration.  Under

New Jersey law, alimony is generally subject to review and

modification on a showing of changed circumstances.  N.J. Stat.

Ann. sec. 2A:34-23 (1987); Lepis v. Lepis, 83 N.J. 139, 416

A.2d 45, 48 (1980).  The agreement required Dr. Ehrenworth to

pay Mrs. Spector $800 per week for 12 years whether or not

Dr. Ehrenworth's or Mrs. Spector's financial circumstances

changed.  The payments were not contingent on Mrs. Spector's

not remarrying, although they would cease if Mrs. Spector died.

See N.J. Stat. Ann. sec. 2A:34-25 (alimony stops on remarriage).

Mrs. Spector points out that the payments were contingent

only on her staying alive during the payment period.  She argues

that her death is not a significant contingency and that she

agreed that the payments would end when she died because her

estate and Dr. Ehrenworth's estate would go to their sons.  We disagree.  Mrs. Spector had no guarantee that, if she died while the weekly payments were being made, Dr. Ehrenworth would leave anything to their sons.  We think her death is a significant contingency.

The fact that the payments continued after Mrs. Spector remarried favors treating them as a property settlement.  In contrast, the fact that the payments were to stop if she died favors treating them as alimony.  This factor is neutral.

e.  Whether the Payments Were Secured

The payments were secured by a $300,000 life insurance policy on the life of Dr. Ehrenworth.  Mrs. Spector paid the premiums on the policy.  If Dr. Ehrenworth died before making all of the weekly payments, the insurance proceeds would be credited against the remaining payments and his estate would pay the balance, if any.  Thus, Dr. Ehrenworth provided no security for the majority of the payments.  This factor is neutral.

f.  Whether Mrs. Spector's Needs Were Considered in Fixing the Amount of the Payments

Mrs. Spector argues that the payments were unrelated to her financial needs and points out that the payments were not adjustable based on any change in the cost of living or change in her financial circumstances.  We disagree.

During the divorce proceedings, Mrs. Spector's lawyer told the court that the settlement was based in part on Mrs. Spector's

needs.  Dr. Ehrenworth points out that he made the payments on Fridays at Mrs. Spector's request so that she could plan her week.  Mrs. Spector stated in the certification she filed to compel Dr. Ehrenworth to make the payments after her remarriage that she needed the money to pay her bills.

We think Dr. Ehrenworth and Mrs. Spector considered Mrs. Spector's needs in fixing the payments.  This factor favors treating the payments as alimony.

g.    Whether Payments Were Related to Dr. Ehrenworth's Income

The record does not establish whether the payments were related to Dr. Ehrenworth's income.  Tobin said Dr. Ehrenworth and Mrs. Spector considered Dr. Ehrenworth's income, but he did not say that his income related to the amount of the payments.  The payments were not adjustable based on changes in Dr. Ehrenworth's financial circumstances.  This factor is neutral.

h.    Whether There Was a Separate Provision for Support

Mrs. Spector points out that the agreement contains a separate provision for child support.  She admits, however, that the weekly payments provision is the only provision in the agreement for her support.

Mrs. Spector argues that Dr. Ehrenworth's obligation under State law to support her terminated when she remarried.  She argues that she and Dr. Ehrenworth agreed that her right to

receive postremarriage payments was part of their property settlement and not alimony for tax purposes.

The fact that the agreement contains no provision for the support of Mrs. Spector other than the weekly payments favors treating the payments as alimony. If a former spouse agrees to pay alimony after his or her spouse remarries, and the agreement is enforced under State law, then the fact that courts in that State may not order postremarriage alimony absent such an agreement does not in itself determine whether the payments are treated as alimony for Federal income tax purposes. Taylor v. Campbell, 335 F.2d 841 (5th Cir. 1964); Mass v. Commissioner, 81 T.C. 112 (1983); Dixon v. Commissioner, 44 T.C. 709 (1965); Hogg v. Commissioner, 13 T.C. 361 (1949); Hesse v. Commissioner, 7 T.C. 700 (1946); Spector v. Commissioner, T.C. Memo. 1994-147.

i.   How the State Court Characterized the Payments

The Superior Court of New Jersey characterized the payments as alimony because Mrs. Spector and Dr. Ehrenworth agreed that the payments were alimony. This favors treating them as alimony.

Mrs. Spector points out that in Ehrenworth v. Ehrenworth, 187 N.J. Super. 342, 349, 345 A.2d 895 (App. Div. 1982), the Appellate Division of the Superior Court analogized the payments to installments on a fixed obligation and stated that the fact that the parties called the payments alimony should not affect whether the obligation to pay survives Mrs. Spector's remarriage.

The court noted that to deny enforcement of the postremarriage payments would deprive Mrs. Spector of benefits for which she negotiated and for which she forwent other possible consideration. Id. at 349, 345 A.2d at 899. Mrs. Spector argues that the forgone consideration to which the appellate court was referring was the property rights she surrendered as part of the divorce agreement.

We disagree. The appellate court enforced Dr. Ehrenworth's obligation to make the alimony payments and held that N.J. Stat. Ann. sec. 2A:34-25 does not preclude a husband and wife from agreeing that the obligation to pay alimony may survive the wife's remarriage. Id. at 347, 345 A.2d at 898. Further, the appellate court expressly declined to characterize the payments for tax purposes. Id. at 350, 345 A.2d at 900.

Mrs. Spector argues that the fact that N.J. Stat. Ann. sec. 2A:34-25 prohibits courts from ordering alimony after the remarriage of the recipient suggests that she and Dr. Ehrenworth viewed the payments as a property settlement. She also contends that, because she received a significant amount of assets in the division of the marital property, she would not have received as large an award of alimony as the weekly payments to which she and Dr. Ehrenworth agreed. Lavene v. Lavene, 162 N.J. Super. 187, 203, 392 A.2d 621 (Ch. Div. 1978); Turner v. Turner, 158 N.J. Super. 313, 325, 385 A.2d 1280 (Ch. Div. 1978); Esposito v. Esposito, 158 N.J. Super. 285, 385 A.2d 1266 (App. Div. 1978).

Mrs. Spector argues that if she and Dr. Ehrenworth had not reached an agreement, the New Jersey court would have awarded a substantial amount of assets to her and would have required her to use the income from those assets for her support before considering any award of alimony. She contends that the court would have significantly reduced any award of alimony because of the large amount of assets awarded her.

We disagree. Although we do not speculate about how much alimony the New Jersey court would have awarded, we think the New Jersey court would have considered that Mrs. Spector earned little income and Dr. Ehrenworth earned significant income during the marriage; that she did not work outside the home during the marriage; and that they were married for nearly 25 years. This suggests that Mrs. Spector was entitled to receive alimony. See Lavene v. Lavene, supra; Turner v. Turner, supra; Esposito v. Esposito, supra.

Mrs. Spector argues that Dr. Ehrenworth agreed that he would not claim the deduction for alimony after she remarried. She points out that Judge Freedman of the Superior Court told Dr. Ehrenworth that he would lose the alimony deduction if Mrs. Spector remarried and that Dr. Ehrenworth understood this. Notwithstanding that conversation, Dr. Ehrenworth did not agree in writing that the payments ceased to be alimony for tax purposes if Mrs. Spector remarried. We think the fact that the divorce agreement does not say that the payments are alimony only

until Mrs. Spector remarries, and instead refers to the entire payment term as the "12 year alimony period" shows that Dr. Ehrenworth and Mrs. Spector did not agree that payments would cease to be alimony when Mrs. Spector remarried.

This factor favors treating the payments as alimony.

4.    Conclusion

Judge Freedman believed that Dr. Ehrenworth and Mrs. Spector intended for the payments to be in part for alimony and in part a property settlement.  We agree.

As discussed in paragraph A-2, respondent argues that the payments should be allocated 80 percent to alimony and 20 percent to a property settlement.  We agree.  See Bishop v. Commissioner, 55 T.C. 720, 726 (1971) (Court found a factual basis for allocating part of payment to alimony and part to property settlement).  Upon consideration of the divorce judgment, the intent of Dr. Ehrenworth and Mrs. Spector when the judgment was entered, Mrs. Spector's many references to the payments as alimony, Dr. Ehrenworth's concessions that he received 55 percent of the marital estate and that the marital estate was worth $2 million, and the factors listed above, we conclude that the weekly payments were 80 percent alimony and 20 percent property settlement.

B.    Additions to Tax

1.    Negligence

Negligence is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299; Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Petitioners must show that they acted reasonably and exercised due care in claiming exemptions for the Ehrenworth children.  Neely v. Commissioner, supra.

Dr. Ehrenworth did not establish that he provided more than $600 to support Richard for the years in issue.

Generally, a parent may claim an exemption for a child for whom he or she has provided more than half of the support.  Secs. 151 and 152.  The exemption for a child whose parents are divorced is allocated between the parents under section 152(e).  The noncustodial parent of a child who has the right to claim the child as a dependent under a divorce decree or written agreement executed before 1985 and who provides at least $600 in annual support for the child is treated as providing more than half of the child's support for purposes of claiming the child as a dependent.  Sec. 152(e)(4).

Respondent determined that Dr. Ehrenworth negligently claimed exemptions for Andrew and Robert for 1986 and 1987. We agree. We believe that it was not reasonable for Dr. Ehrenworth to believe that he could claim exemptions for Robert and Andrew for 1986 and 1987 because he did not have custody of them and the agreement did not allow him to claim these exemptions. Dr. Ehrenworth does not argue that he had reasonable cause for claiming exemptions for Robert and Andrew. We treat this as his concession of this issue. We find that Dr. Ehrenworth was negligent with respect to the issue of whether he was entitled to claim exemptions on his 1986 and 1987 tax returns.

Respondent also determined that Mrs. Spector negligently claimed an exemption for Robert for 1986 because she did not show that she provided more than $600 of support for him in 1986. We disagree. Although she did not establish that she provided more than $600 to support Robert in 1986, she showed that she provided more than $600 to support him in 1987 and 1988. She claimed the exemption in good faith. We find that Mrs. Spector was not negligent in claiming an exemption for Robert for 1986.

2. Substantial Understatement of Income Tax

Respondent determined that petitioners were liable for additions to tax for substantial understatement of income tax under section 6661 for 1986, 1987, and 1988. Respondent conceded that petitioners are not liable for the additions to tax for substantial understatement for 1986, 1987, and 1988 for any

deficiencies related to the characterization of the payments from Dr. Ehrenworth to Mrs. Spector. Respondent did not waive the section 6661 additions to tax relating to the exemption issue. The tax related to the exemption issue will not exceed $5,000, so the section 6661 additions will not apply.

To reflect concessions and the foregoing,

<u>Decisions will be entered under Rule 155</u>.